**AAMCO AUTOMATIC TRANS-
MISSIONS, INC.**

v.

**Harry M. TAYLOE et al.**

**Gordon G. PARO et al.**

v.

**AAMCO AUTOMATIC TRANS-
MISSIONS, INC.**

Civ. A. Nos. 73–391, 73–1615.

United States District Court,
E. D. Pennsylvania.

April 18, 1975.

See also, D.C., 368 F.Supp. 1283.

George J. Hayward, Joseph P. Mullen, Bridgeport, Pa., for Aamco Automatic Transmissions (plaintiff-defendant).

Oliver C. Biddle, H. David Prior, Richard L. Sherman, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Harry M. Tayloe, and others and Gordon G. Paro, and others.

## MEMORANDUM OPINION AND ORDER

VAN ARTSDALEN, District Judge.

Aamco Automatic Transmissions, Inc., instituted suit against Harry M. Tayloe, Jimran Corporation, Crossroads Transmissions, Inc. and Edward R. Valencia (Civil Action No. 73–391), alleging that Aamco was in the business of franchising others to operate automatic transmission repair shops under the Aamco trade name, that it had executed a franchise agreement with Tayloe and that Tayloe, in concert with the other defendants, had breached that agreement. In addition, it was alleged that the other defendants had intentionally interfered with the contractual relations between Aamco and Tayloe. Defendant Tayloe filed an individual contract counterclaim against this complaint alleging wrongful termination of the franchise agreement by Aamco and a class action antitrust counterclaim alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 14, in that Aamco compelled Tayloe and other members of the class to purchase initial mechanical equipment and repair parts from Aamco by tying such purchases to the purchase of the Aamco franchise as a written condition in their franchise agreements. In a separate action (Civil Action No. 73–1615), Gordon G. Paro filed a class action antitrust claim against Aamco on essentially the same grounds as those set forth in Tayloe's class action counterclaim. The Paro action, originally brought in the Eastern District of Wisconsin, was transferred to this court on July 13, 1973 and on Oc-

tober 18, 1973 was consolidated for all purposes with Tayloe's class action counterclaim.

Tayloe and Paro have now moved for determination of a class under Federal Rule 23. The class proposed consists of all persons who were franchisees of Aamco at any time during the period of February 12, 1969 to September 1, 1972. The Paro complaint was filed on February 12, 1973 and February 12, 1969 thus marks the cut-off date for purposes of the applicable four year statute of limitations. 15 U.S.C. § 15b. September 1, 1972 approximates the date on which the Federal Trade Commission issued a complaint against Aamco challenging certain provisions contained in Aamco franchise agreements which required franchisees to purchase initial mechanical equipment and repair parts from Aamco. These are the same franchise provisions which are the subject of the instant lawsuit. Aamco thereafter eliminated these provisions from its franchise agreements pursuant to a consent order issued by the Federal Trade Commission on October 18, 1972. In the Matter of Aamco Automatic Transmissions, Inc., 81 Federal Trade Commission Decisions 618 (1972).[1]

Of the proposed class of Aamco franchisees, certain members have terminated their franchise relationship with Aamco while others currently maintain their relationship with Aamco as present franchisees. Tayloe and Paro were franchisees of Aamco during the period of February 12, 1969 to September 1, 1972, but neither currently maintains a franchise relationship with Aamco.[2]

■ To be maintainable as a class action, a suit must meet all of the mandatory requirements of Rule 23(a) and in addition fall within one of the subsections of Rule 23(b). As movants on the class action motion, Tayloe and Paro bear the burden of demonstrating the propriety of such class action treatment. Boston Pneumatics, Inc. v. Ingersoll-Rand, 65 F.R.D. 61, 63 (E.D.Pa.1974); B & B Investment Club v. Kleinert's Inc., 62 F.R.D. 140, 145 (E.D.Pa.1974); Cusick v. N. V. Nederlandsche Combinatie Voor Chemische Industrie, 317 F. Supp. 1022, 1027 (E.D.Pa.1970).

Tayloe and Paro assert that all of the mandatory requirements of 23(a) are satisfied and that this action is properly maintainable under subsection 23(b)(3).

Rule 23(a) states that one or more members of a class may sue as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of

---

1. Pursuant to this FTC consent order Aamco was directed "to cease and desist from requiring, in any manner or by any means, directly or indirectly, its franchisees to purchase the automotive parts, new or rebuilt, equipment, merchandise or services used by such franchisees in the establishment and operation of their automotive repair businesses from AAMCO or from any other source except as hereinafter provided."

The consent order permitted Aamco to maintain a quality control program and to compile an approved vendor list from which Aamco franchisees could purchase their requirements of automotive transmission parts. It is interesting to note that the Federal

Trade Commission recently ordered Aamco to show cause why the consent order of October 18, 1972 should not be modified as to eliminate this quality control program from its provisions. The FTC stated that it had reason to believe that the outstanding order might be inappropriate in permitting Aamco to require such "secondary level of inspection" and maintenance of an approved vendor's list. CCH Trade Regulation Reporter —Vol. 3, ¶ 20, 760 (1974).

2. According to Aamco, Paro ceased operating as an Aamco franchisee on or about February 29, 1971 and Tayloe ceased in February, 1973. Response of Aamco to Class Action Motion, p. 3.

the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) states in pertinent part that

[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

*   *   *   *   *   *

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Aamco raises several objections to the proposed class action motion. One of the principal objections posed is that Tayloe and Paro, as former franchisees, have interests in conflict with and antagonistic toward the interests of those franchisees currently maintaining a franchise relationship with Aamco. On this basis, Aamco argues that Tayloe and Paro may not properly represent a class consisting of both former and present franchisees.

■ The absence of conflicting interests between the representative parties and the proposed members of the class is essential for class action certification under the adequacy of representation requirement of Rule 23(a)(4). As the Third Circuit recently announced in Wetzel v. Liberty Mutual Insurance Company, 508 F.2d 239, 247 (3d Cir. 1975), adequate representation depends on two factors:

(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

The question of potential conflict between former and present Aamco franchisees is therefore a critical issue in this case.[3]

A number of recent decisions have dealt with the question of whether a former franchisee may properly represent a class consisting of both former and present franchisees. Schuler v. Better Equipment Launder Center, Inc., 1974–2 CCH Trade Cases, ¶ 75,237 (D. Mass.1974); Thompson v. T. F. I. Companies, Inc., 1974–2 CCH Trade Cases, ¶ 75,215 (N.D.Ill.1974); DiCostanzo v. Hertz Corporation, 63 F.R.D. 150 (D. Mass.1974); Matarazzo v. Friendly Ice Cream Corporation, 62 F.R.D. 65 (E.D. N.Y.1974); McMackin v. Schwinn Bicycle Co., 354 F.Supp. 1154 (N.D.Ill. 1973); Seligson v. Plum Tree, Inc., 61 F.R.D. 343 (E.D.Pa.1973); Lupia v. Stella D' Oro Biscuit Co., 1974–1 CCH Trade Cases, ¶ 75,046 (N.D.Ill.1972); Van Allen v. Circle K Corporation, 58 F. R.D. 562 (C.D.Calif.1972); Free World Foreign Cars, Inc. v. Alfa Romeo, 55 F.R.D. 26 (S.D.N.Y.1972); Gaines v. Budget Rent-A-Car Corp., 1972 CCH Trade Cases, ¶ 73,860 (N.D.Ill.1972). In each of these cases, the court refused to permit a former franchisee to represent a class consisting of both former

---

3. The absence of conflicting interests has also been held to be essential under the typicality requirement of Rule 23(a)(3). *See, e.*g., Mersay v. First Republic Corporation of America, 43 F.R.D. 465, 468 (S.D.N.Y.1968).

and present franchisees finding that on the basis of the particular facts presented conflicting interests existed between the former and present franchisees.[4] No case has been cited by the movants which has allowed a former franchisee to represent a class consisting of both former and present franchisees.[5]

■ Each case, though, must be judged on its own facts and whether a party adequately represents a proposed class depends on all the circumstances presented. Wetzel v. Liberty Mutual Insurance Company, 508 F.2d 239, 247 (3d Cir.1975). In this regard, Tayloe and Paro argue that the facts of the instant case differ from those presented in the above decisions and justify certification of an all-inclusive class.

■ Tayloe and Paro point out that the instant litigation only challenges the legality of certain provisions formerly contained in Aamco franchise agreements which were eliminated by the October 18, 1972 FTC consent order. Consequently, movants argue that this suit does not involve a request for injunctive relief or declaration of illegality or interpretation of any part of a franchise agreement currently in force between Aamco and any of its present franchisees. Thus, unlike the situation in Matarazzo v. Friendly Ice Cream Corporation, *supra*, there is no danger that

movants' success in the instant suit might disrupt current relations between Aamco and its present franchisees by requiring termination of present franchise agreements. For the same reasons, it cannot be said that conflicting interests exist because present franchisees are profiting from the practices alleged to be unlawful and if left to their own initiative would not challenge them in the courts. McMackin v. Schwinn Bicycle Co., supra; Lupia v. Stella D'Oro Biscuit Co., *supra*.

Nevertheless, it is apparent that certain conflicting interests do exist between the former and present franchisees of Aamco even though the current franchise agreements are not at issue. For those members of the proposed class who are currently maintaining a franchise relationship with Aamco, the continued economic viability and public goodwill of Aamco is a legitimate and real concern. Those who have severed their business relationship with Aamco do not share in this interest. On the contrary, of principal concern to the class of former franchisees is the recovery of maximum monetary damages without regard to the possible adverse impact of this lawsuit on the present Aamco franchise system. This particular conflict between present and former franchisees has been recognized and cited by other courts in refusing certifica-

4. It is interesting to note that two of the above cited decisions, Seligson v. Plum Tree, Inc. and McMackin v. Schwinn Bicycle Co., vacated earlier rulings by the deciding judges certifying a class consisting of former and present franchisees. Seligson v. Plum Tree, Inc., 55 F.R.D. 259 (E.D.Pa.1972) conditional certification); McMackin v. Schwinn Bicycle Co., 1972 CCH Trade Cases, ¶ 74,220 (N.D.Ill.1972).

5. Herrmann v. Atlantic Richfield Co., 1975 CCH Trade Cases, ¶ 60,115 (W.D.Pa.1974), a recent decision handed down after movants' briefing of this issue, certified a class consisting of past and present lessee dealers of ARCO. The representative plaintiffs, however, included both former and present

lessee dealers. In the instant case, only former franchisees are named as representative parties and therefore reliance on *Herrmann* would be inappropriate. For this same reason, the comprehensive and well-reasoned decision of my colleague, Judge Becker, in Ungar et al. v. Dunkin' Donuts of America, Inc., Civil Action Nos. 72–88, 72–1526 (March 12, 1975), is distinguishable from the case *sub judice*. In the *Dunkin' Donuts* case fourteen present and former franchisees were permitted to represent a class of present and former franchisees. Judge Becker did recognize that possible conflicts could arise at a later date and in such event subclasses of present and former franchisees would be considered. *Slip opinion* at 128–129.

tion of an all-inclusive class. Thompson v. T. F. I. Companies, Inc., 1974–2 CCH Trade Cases, ¶ 75,215, p. 97,475 (N.D. Ill.1974); Seligson v. Plum Tree, Inc., 61 F.R.D. 343, 346 (E.D.Pa.1973); Van Allen v. Circle K Corporation, 58 F.R.D. 562, 564 (C.D.Calif.1972); Free World Foreign Cars, Inc. v. Alfa Romeo, 55 F. R.D. 26, 29 (S.D.N.Y.1972). Arguably this conflict could be obviated by allowing those present franchisees who are opposed to this lawsuit to exercise their "opt-out" privilege under Rule 23(c)(2). I find this course inappropriate. As stated by the court in Free World Foreign Cars, Inc. v. Alfa Romeo, 55 F.R.D. 26 (S.D.N.Y.1972):

> It is no answer to say that those franchise dealers who do not desire to be represented by plaintiff may opt out under the provisions of Rule 23(c)(2). The machinery of the Rule, with its attendant expense, should not be brought into play unless initially plaintiff, who has the burden of proof, justifies its application.

*Id.* at 29. (footnote omitted). *Accord* Thompson v. T. F. I. Companies, Inc., 1974–2 CCH Trade Cases, ¶ 75,215, p. 97,475 (N.D.Ill.1974); Matarazzo v. Friendly Ice Cream Corporation, 62 F. R.D. 65, 68 (E.D.N.Y.1974); Abercrombie v. Lum's Inc., 345 F.Supp. 387, 394 (S.D.Fla.1972).

It is therefore apparent that the conflicting interests between Tayloe and Paro, as former franchisees, and the present franchisees of Aamco render Tayloe and Paro inadequate representatives of a class consisting of both former and present franchisees.

In reaching this conclusion, I have not considered the numerous statements, prepared by Aamco and signed by present franchisees, which were submitted by Aamco in opposition to the class action motion and which assert in conclusory fashion that the interests of Tayloe and Paro, as former franchisees, are adverse to the interests of the present franchisees. Such unauthorized communications with potential class members are specifically disavowed by the Manual for Complex Litigation, § 1.-41 (1973). Although the current record does not suggest that coercive or fraudulent tactics were employed by Aamco in securing these statements, the circumstances under which the statements were procured are nevertheless unclear. Moreover, because the submitted statements summarily allege that conflicting interests exist, their probative significance is minimal.

Tayloe and Paro's inability to adequately represent the proposed class of former and present Aamco franchisees does not, however, disqualify them from representing a class of former Aamco franchisees for which the above mentioned conflicting interests do not exist. *Accord,* Matarazzo v. Friendly Ice Cream Corporation, 62 F.R.D. 65, 69 (E.D.N.Y.1974). So defining the prospective class, it is now appropriate to address the remaining requisites for class action certification.

One of the most important prerequisites for class action certification under Rule 23(a) is the requirement that there be questions of law or fact common to the class. The basic claim asserted by Tayloe and Paro is that Aamco violated the Clayton and Sherman Antitrust Acts by illegally tying the purchase of initial mechanical equipment and repair parts to the purchase of the Aamco franchise. Tayloe and Paro allege that as an express written condition in their franchise agreements, they were required to purchase their initial mechanical equipment and repair parts from Aamco. In this action, Tayloe and Paro seek only to represent those Aamco franchisees who, like themselves, executed written franchise agreements which contained express provisions requiring the purchase of initial mechanical equipment and repair parts from Aamco. (Reply Memorandum of Tayloe and Paro, p. 2). On this basis, Tayloe and Paro posit that

the common question of law and fact is whether these express purchase requirement provisions contained in Aamco franchise agreements constitute illegal tying arrangements in violation of the antitrust laws.

Aamco argues that common questions do not exist because Aamco never utilized a single standard franchise agreement but in fact employed at least seven different forms of franchise agreements during its eleven years of operation. Aamco takes the position that there are sufficient variations between the franchise agreements to preclude class action treatment.

I have carefully examined all of the franchise agreements which Aamco has submitted as exhibits to its reply memorandum. With the exception of Exhibit F, all of the agreements expressly require the franchisee to purchase initial equipment and supplies exclusively from Aamco. Specifically, Exhibits C, D and E state that the franchisee must purchase all parts, materials, supplies, accessories and equipment itemized in an attached appendix from Aamco. Exhibits G and I state that Aamco "shall furnish" the franchisee with equipment, supplies and inventory itemized in an attached appendix at the price listed therein. Exhibit H states that the franchisee must purchase all parts, materials, supplies, accessories and equipment from or through Aamco without reference to an itemized appendix. Exhibit F differs from the other agreements in that it permits the franchisee to purchase all equipment, supplies and inventory itemized in an attached appendix from either Aamco or an Aamco approved and certified vendor. All of the agreements, with the exception of Exhibit H, permit the franchisee to purchase additional equipment and general supplies from any source after the shop is open and in operation.

With respect to repair parts, all of the agreements, with the exception of Exhibits F, H and I, expressly require the franchisee to purchase all parts used in the repair of transmissions exclusively from Aamco. Certain exceptions are provided. The franchisee is permitted to purchase "original equipment manufactured" parts if a needed part is out of stock and to use certain "hard" parts from used transmissions for the repair of other transmissions. Exhibit H does not expressly mention repair parts. However, the agreement does state that the franchisee is required to purchase "all parts" from or through Aamco and presumedly this all-inclusive term would encompass repair parts. Exhibits F and I, unlike the other agreements, permit the franchisee to purchase his requirement of repair parts from either Aamco or an Aamco approved and certified vendor.

Both Tayloe and Paro executed an Exhibit C franchise agreement. The Exhibit C franchise agreement expressly requires the purchase of initial equipment and repair parts (with the noted exceptions) exclusively from Aamco. With respect to their initial equipment claim, therefore, I find that common questions of law and fact exist between Tayloe and Paro and those members of the class who executed agreements which expressly require the franchisee to purchase initial equipment exclusively from Aamco, *viz.*, Exhibits C, D, E, G, H and I, on the issue of whether these provisions constitute an unlawful tying arrangement. Those franchisees who executed an Exhibit F agreement were not required to purchase initial equipment from Aamco and therefore common questions do not exist as to them on this issue. With respect to their repair parts claim, I find that common questions of law and fact exist between Tayloe and Paro and those members of the class who executed agreements requiring the purchase of repair parts (with the noted exceptions) from Aamco, *viz.*, Exhibits C, D, E, G and H on the issue of whether these provisions constitute an unlawful tying arrangement. The Exhibit F and I franchise agreements did

not impose such purchase requirements, therefore, common questions do not exist as to those class members on this issue.[6]

Of course, as to both the initial equipment and repair parts claims of Tayloe and Paro common questions also exist as to those members of the class who executed other franchise agreements of Aamco which are similar to the one executed by Tayloe and Paro, Exhibit C, but which have not been presented as exhibits on this motion.

■ Aamco has also argued against a finding of commonality on the basis that the challenged provisions do not constitute an illegal tying arrangement. This argument, however, is addressed to the merits of the class action claims and is irrelevant on the issue of class action certification. Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

As noted earlier, the basic claim of Tayloe and Paro is that Aamco illegally tied the purchase of initial mechanical equipment and repair parts to the purchase of the Aamco franchise. Tayloe's counterclaim raises an additional antitrust claim. Paragraph 19 of Tayloe's amended counterclaim states that Aamco illegally restrained competition in violation of the Sherman and Clayton Acts by threatening to terminate the franchises of defendant Tayloe and the other members of the class if they did not purchase repair parts from Aamco. It is unclear whether class action certification is sought as to this claim. The claim is not alleged in the Paro complaint and it has not been

briefed or argued in the class action motion. Moreover, the basic facts underlying the claim have not been presented. It is unclear whether the claim involves separate incidents of individual threats, or a common course of conduct by Aamco. Cosequently, it is impossible to determine whether common questions of law and fact exist as to this claim. No determination will therefore be made as to the appropriateness of class action treatment of this claim.

An additional antitrust claim is also contained in the Paro complaint. Paragraph 8(c) states that Aamco violated the Sherman and Clayton Acts by prohibiting franchisees from operating any transmission repair shops in the United States other than in the locality set forth in the applicable franchise agreement. This claim is not alleged in the counterclaim of Tayloe and it has not been briefed or argued in the class action motion. It is unrelated to the basic tie-in claims and unless the parties indicate that this claim is being pursued for class action treatment, no determination will be made on this issue.

■ Finding that common questions exist as to the initial equipment and repair parts claims, it is necessary under Rule 23(b)(3) to determine whether these common questions predominate over any questions affecting only individual members. In this regard, Aamco takes the position that several individual questions militate against certification of a class. First, Aamco notes that in the event of a finding of liability, separate evidence will be required as to each individual class member on the issue of damages. Specifically, Aamco states

6. It is unclear whether the exclusion of those Aamco franchisees who executed an Exhibit F franchise agreement will in actuality affect membership in the proposed class. In submitting its various franchise agreements, Aamco stated that these were agreements used by Aamco during its eleven years of operation without indicating the periods in which the particular forms were employed. It is entirely possible that the Exhibit F franchise agreement was adopted by Aamco to comply with the requirements of the October 18, 1972 FTC consent order. If so, then those franchisees who executed an Exhibit F agreement are not even involved in this lawsuit, since the proposed class only includes those franchisees who executed a franchise agreement on or before September 1, 1972.

that testimony will be required as to market supplies and prices in each of the geographic areas where class members operated their shops. I agree that in the event of a finding of liability, damages might have to be established on an individual basis. This fact alone, however, does not preclude class action treatment. Ungar et al. v. Dunkin' Donuts of America, Inc., Civil Action Nos. 72–88, 72–1526 (March 12, 1975) slip op. at 131; Matarazzo v. Friendly Ice Cream Corporation, 62 F.R.D. 65, 70 (E.D.N.Y.1974); City of New York v. General Motors Corporation, 60 F.R.D. 393, 395 (S.D.N.Y.1973), appeal dismissed, 501 F.2d 639 (2d Cir. 1974). The issue of liability in the instant case can be properly adjudicated independently of damages. If liability is then established, the individual claims for damages can be determined in subsequent separate proceedings. Ungar et al. v. Dunkin' Donuts of America, Inc., *supra* at 131; City of New York v. General Motors Corporation, *supra*, 60 F.R.D. at 395; 3B Moore's Federal Practice, ¶ 23.-45[2] at 23–759.

▮▮▮▮ Aamco next contends that it has various potential counterclaims against many of the proposed class members for amounts due under their franchise agreements. Aamco argues that these counterclaims will create a proliferation of individual issues precluding class action treatment. I disagree. Initially it should be noted that under Rule 13(a) and (b), the filing of compulsory and permissive counterclaims is permitted only against opposing parties and there is some question as to whether class members who do not intervene or actively participate in a lawsuit are opposing parties within the meaning of this Rule. Weit v. Continental Illinois National Bank and Trust Company, 60 F.R.D. 5, 8 (N.D.Ill.1973); Donson Stores, Inc. v. American Bakeries Company, 58 F.R.D. 485, 489 (S.D.N.Y.1973). Assuming, however, that the counterclaims could be properly raised, this does not necessitate denial of the class action motion. According to the affidavit of James Coyne, Controller of Aamco, the counterclaims are founded on various contract breaches by certain former franchisees. Specifically, the counterclaims include claims for nonpayment of franchise fees and nonpayment of amounts due for parts, initial equipment, sign rentals, promissory notes, advertising and intershop guarantees. With respect to the claims for nonpayment of initial equipment and parts, it would appear that these would consist solely of claims for liquidated amounts allegedly due from particular franchisees. As such, these claims could be effectively presented when individual claims for damages are presented in the event of liability on the initial equipment and repair parts tie-in claims. At that time, the franchisees would be permitted to present whatever defenses they may have to these nonpayment claims. The remaining contract claims of Aamco, however, appear to be unrelated to the initial equipment and repair parts claims. Consequently, Aamco would not be required to assert these claims as compulsory counterclaims in this lawsuit, but would have the option of bringing them in a separate suit or of asserting them in this lawsuit as permissive counterclaims under Rule 13(b). In the event that Aamco chooses to assert these claims in the present action, this court has the discretion to order a separate trial of such counterclaims, whether ultimately characterized as compulsory or permissive, under the guidelines of Rule 42(b). Of course, it is premature to make a determination as to severance until the actual counterclaims are filed. However, from the description in the Coyne affidavit, it would appear that these contract claims are unrelated to the main action and would unduly complicate the trial of the class action lawsuit and would therefore be severed from this action.

Finally, Aamco contends that it has secured releases and settlement agreements from a number of the proposed class members which will inject additional individual issues into this case. Copies of these releases and settlement agreements have not been presented. It is unknown therefore whether a standard release and settlement form was employed that would present a common question or whether separate individual agreements were made. Moreover, it is unknown whether the releases and settlement agreements have any bearing on this case as there is no indication that the releases and settlement agreements cover any of the antitrust claims raised by Tayloe and Paro in this action. Until such time as these releases and settlement agreements are presented, no determination can be made as to the possible effect these items may have on the propriety of this action proceeding as a class action.

Several other objections are raised by Aamco with respect to the remaining class action requirements. Specifically, Aamco argues that the claims of Tayloe and Paro concerning initial mechanical equipment are not typical of the class because their individual claims are barred by the statute of limitations. Both Tayloe and Paro deny that their claims are so barred. The statute of limitations is an affirmative defense under Rule 8(c) upon which Aamco bears the burden of proof. Aamco has offered no evidence to establish that the Tayloe and Paro initial equipment claims are time-barred. It therefore affords no basis for denial of this class action motion.

Aamco also contends that a conflict of interest exists between Tayloe and Paro and certain members of the proposed class of former franchisees. Aamco delineates the class of former franchisees into two sub-categories. One category includes those former franchisees who terminated their franchises with the approval and knowledge of Aamco and secured settlements of outstanding charges. The other group consists of those former franchisees who unilaterally terminated their franchises without the approval of Aamco and without settlement of outstanding charges. Aamco states that Tayloe and Paro belong to this latter sub-category of former franchisees. Aamco argues that a potential conflict exists between the two groups in that the former group may not desire litigation against Aamco which might possibly jeopardize their settlement agreements with Aamco. Again, none of the settlement agreements have been presented to the court and it is impossible to determine at this time whether they will be affected in any way by this lawsuit. It is entirely premature, therefore, to deny the class action motion on the basis of this alleged potential conflict. It may be added that under Rule 23(c)(1) class action certification is always subject to amendment or alteration at any time prior to decision on the merits. If at a later time, a clear and definite conflict among the former franchisees is established, appropriate measures may be taken.

With respect to the final requirements for class action certification, Aamco concedes that the class of former franchisees is so numerous that joinder of all members is impracticable. Rule 23(a)(1). Aamco also admits that the retained counsel of Tayloe and Paro are particularly well qualified and experienced and will fairly represent the interests of the class. Rule 23(a)(4). I also find that, under the circumstances of this case, a class action is superior to other available methods for the fair and efficient adjudication of the antitrust tie-in claims of Tayloe and Paro. Rule 23(b)(3).

Finding that all of the requisites of Rule 23(a) and 23(b)(3) are satisfied, I conclude that the antitrust tie-in claims of Tayloe and Paro as to initial equipment and repair parts may be maintained as a class action; the class to comprise all former franchisees of Aam-

co who were franchisees at any time during the period of February 12, 1969 to September 1, 1972 and who executed franchise agreements similar to that executed by Tayloe and Paro.

■ I also find that the class action antitrust claims of Tayloe and Paro are unrelated to the main breach of contract and tort claims of Aamco in Civil Action No. 73–391, the individual breach of contract counterclaim of Tayloe in Civil Action No. 73–391, and the breach of contract counterclaim of Aamco in Civil Action No. 73–1615. Joint trial of these claims with the class action antitrust claims will unnecessarily and unduly complicate this entire action. The contract and tort claims will therefore be separated from the class action antitrust claims of Tayloe and Paro under Rule 42(b) with the exception that Aamco may raise any contractual claim it may have against Tayloe or Paro for nonpayment of amounts due for initial equipment and repair parts at such time as individual requests for damages are presented by Tayloe or Paro on their tie-in claims. At that time, Tayloe and Paro may present whatever defenses they may have to these nonpayment claims.

With respect to the contract and tort action of Aamco in Civil Action No. 73–.391, two motions are outstanding and will be presently addressed. Defendants Jimran, Crossroads and Valencia moved to dismiss Aamco's complaint against them for lack of personal jurisdiction. Several jurisdictional bases were alleged, viz., (1) the Lanham Trademark Act; (2) the Pennsylvania "Long-Arm" statute; (3) the "Alter Ego" theory and (4) an "assignment" theory. By previous opinions, I held that personal jurisdiction may not be established over these defendants under the Lanham Trademark Act, the Pennsylvania "long-arm" statute or on the theory that the original franchise agreement was assigned to the defendants. I have also held that personal jurisdiction may not

be established over Valencia under the "alter ego" theory and the complaint against him has been dismissed. With respect to Jimran and Crossroads, decision was deferred on the "alter ego" issue pending completion of additional discovery which Aamco argued was essential for proper presentation of its claim. The additional discovery requested included the oral depositions of Crossroads, through its president, Valencia, and Jimran, through its president, Tayloe, and Tayloe, individually. The Tayloe and Valencia depositions have been completed and have been filed. The jurisdictional record is now complete and the final Aamco argument contra the motion to dismiss may be addressed.

Aamco's position in this matter has been reviewed in previous opinions. Basically, it is Aamco's contention that Jimran and Crossroads are sham corporations and the mere "alter egos" of Tayloe. As a consequence of this relationship, Aamco argues that Tayloe's submission to personal jurisdiction in this lawsuit may be imputed to Jimran and Crossroads as all three defendants represent one legal entity. I do not agree that Aamco has met its factual burden in establishing the "alter ego" status of Jimran and Crossroads, even if such a theory could give a valid basis for personal jurisdiction. The complaint against these defendants will therefore be dismissed.

■■ All of the parties agree that in March, 1966, Tayloe and Aamco entered into a franchise agreement by which Tayloe was granted permission to operate an Aamco-franchised transmission repair shop in Falls Church, Virginia. In 1967, Tayloe incorporated Jimran for the actual operation of the transmission repair shop. According to his deposition, Tayloe took this action upon the advice of counsel for the purposes of limiting his personal liability and obtaining certain tax advantages (Tayloe deposition, pp. 51–52). These are entirely legitimate reasons for incor-

poration. Aamco points out that at all times Tayloe has been the President and a Director of Jimran and that he and his wife have been the majority shareholders. It is well established, however, that a corporation is separate and distinct from its officers, directors and shareholders, Gottlieb v. Sandia American Corporation, 452 F.2d 510, 514 (3d Cir.), cert. denied, 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971); Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3d Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967), cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968), and therefore these facts alone cannot justify disregard of the corporate identities of Jimran and Crossroads. Aamco further argues that corporate formalties were often ignored in the operation of Jimran. Aamco alleges, for example, that regular shareholder and director meetings were not held, or if held, were not properly noted in the corporate records; certain stock transfers and redemptions were never recorded in the corporate stock books; the lease of the transmission center was executed by Tayloe but never formally assigned to the corporation; Tayloe withdrew funds from the corporation without proper authorization from the board of directors; and Tayloe's son was made a director of Jimran although he was not a shareholder as required in the articles of incorporation. Several other instances of irregularity are cited.

It is not disputed that Jimran was at all times a closely-held corporation. Besides Mr. and Mrs. Tayloe, who were the majority shareholders, only four other persons, James and Mary Shortly, Arthur Wooldredge and Edward Valencia, ever owned stock in Jimran. (Tayloe deposition, p. 8). The lack of formalities in a closely-held or family corporation has been held to be of little consequence in an action by an outside party to disregard the corporate entity. Zubik

v. Zubik, *supra*, 384 F.2d at 271 and the cases cited therein at fn. 4. Moreover, aside from noncompliance with corporate formalities, there is nothing to indicate that the stock transactions or fund withdrawals were other than bona fide arms-length corporate dealings.

For example, Aamco's claim that Tayloe withdrew certain corporate funds without director approval is drawn from a proposed resolution in the minutes of a special meeting of the directors of Jimran on June 19, 1967 which requested ratification and approval of certain loans made to Tayloe in anticipation of a bonus. The resolution was rejected at that directors' meeting. This fact alone, however, does not establish that the loan transactions between Tayloe and Jimran were not in fact bona fide loan transactions. Nor does it indicate that the loans were not thereafter ratified and approved at another directors' meeting; or that the loans were not subsequently repaid by Tayloe or remitted in consideration of a later approved bonus. In fact, the rejection of the particular loan resolution by the directors tends to disprove Aamco's basic "alter ego" contention that Tayloe had complete control over the operation of Jimran.

Under somewhat similar circumstances, the Third Circuit in Zubik v. Zubik held that corporate informalities as to meetings, bookkeeping and activities concerning sale, purchase, subletting, repairs and maintenance of equipment, oral renewal of leases and alteration of rentals and salaries did not justify disregard of the corporate identity despite the fact that as to some of the above informalities the evidence tended to show a possible lack of arm's-length dealing between the defendant and the corporation.

Following *Zubik*, therefore, it cannot be said that these various activities cited by Aamco support the position that Jimran was a sham corporation existing only as the "alter ego" of Tayloe.

A similar conclusion is warranted with respect to Crossroads. Crossroads was solely organized in January of 1973 by Edward Valencia and Tayloe's son. In May of 1973, Valencia purchased the interest of Tayloe's son in Crossroads and became its sole shareholder. At no time did Tayloe ever hold any equity interest in Crossroads, nor did he ever serve as an officer or director of that corporation.

Aamco takes the position that Crossroads "was a shell of a corporation, no more than [an] extension of Jimran which was itself an extension of Tayloe." In support, Aamco notes that in February, 1973, Jimran terminated all of its business activities and turned over operation of its transmission repair shop to Crossroads. As part of that transfer, Jimran orally leased its assets to Crossroads and in May, 1973 sold certain of the assets to Valencia.

The take-over by Crossroads of the Jimran operation, however, does not, in and of itself, make Crossroads the "alter ego" of Jimran or strip Crossroads of its separate corporate identity.

Aamco further argues that Jimran assumed certain of the incorporating and initial operational expenses of Crossroads. According to the Tayloe deposition, payments were made to and on behalf of Crossroads, but these payments were in the nature of loans that were to be repaid. In any event, though, these facts alone would not sustain a finding that Crossroads, by the acceptance of funding from another corporation, thereby became the "alter ego" of that corporation.

I have carefully reviewed the depositions of Tayloe and Valencia and the myriad of arguments propounded by Aamco in support of its "alter ego" theory. I do not find that the facts sustain a conclusion that Jimran and Crossroads were sham corporations or the "alter egos" of Tayloe. Aamco has requested no additional discovery. Jurisdiction not having been established under any of the theories proffered by plaintiff, the motions to dismiss of defendants Jimran and Crossroads for lack of personal jurisdiction will be granted and the complaint against them dismissed.

Aamco has also moved to dismiss the second amended contract counterclaim of Tayloe for failure to state a claim upon which relief can be granted. In the alternative, Aamco has moved to strike paragraph 28(c) and Exhibit A of that counterclaim. In his seconded amended counterclaim, Tayloe asserts that Aamco expressly and impliedly agreed and represented that it would take all reasonable steps to protect and enhance the goodwill and reputation of the name "Aamco" as it related to automobile transmission repair shops. It is alleged that Aamco breached this duty by engaging in various false, misleading and deceptive advertising and sales practices and techniques. Paragraph 28(c) avers that as a direct result of these activities, the Federal Trade Commission instituted proceedings against Aamco which terminated in a consent order directing Aamco to cease and desist from such activities. In the Matter of Aamco Automatic Transmissions, Inc., et al., 77 Federal Trade Commission Decisions 1559 (1970). The publicity generated by this consent order is alleged to have caused further damage to the goodwill of the name "Aamco."

Aamco has moved to dismiss on the basis that Tayloe's cause of action is founded on alleged violations of the Federal Trade Commission Act and private litigants do not have a right of action under that act. Although the activities cited by Tayloe are similar to the activities cited by the FTC in its action under the Federal Trade Commission Act, Tayloe's claim is founded on breach of contract and not on violation of the Federal Trade Commission Act. Aamco also contends that the averments of fraud are not stated with sufficient particularity to comply with the requirement of Rule 9(b). The averments in-

volving fraud and misrepresentations are sufficient, for pleading purposes, to afford Aamco adequate notice of the claims against them. The claims may be further clarified through the discovery process. Finally, Aamco has moved to strike Paragraph 28(c) and Exhibit A, which is a copy of the FTC order, because of their prejudicial effect on Aamco. Paragraph 28(c) states a valid claim for relief against Aamco and the FTC order, although not proof of the breach of contract allegations contained in paragraphs (a) and (b), is relevant on the issue of damage to the goodwill of the name "Aamco." The motion to dismiss and strike will therefore be denied.