**In re INTERNATIONAL HOUSE OF PANCAKES FRANCHISE LITIGATION.**

No. 77.

United States District Court, W. D. Missouri, W. D.

March 23, 1978.

Sheridan Morgan, Kansas City, Mo., Morris, Larson, King, Stamper & Bold (co-lead counsel), Kansas City, Mo., for plaintiff.

Harry L. Gershon, Richards, Watson & Hemmerling, Los Angeles, Cal., for defendant.

## ORDER ACCEPTING IN PART AND REJECTING IN PART THE REPORT OF CLASS COUNSEL REGARDING ELIGIBILITY OF FORMER FRANCHISEE SUBCLASS MEMBERS AND "LIMBO" CLASS MEMBERS TO PARTICIPATE IN SETTLEMENT FUNDS AND SETTING FORTH PROCEDURE FOR THE DISTRIBUTION OF SETTLEMENT FUNDS

COLLINSON, District Judge.

### I.  HISTORY OF THE LITIGATION

This multidistrict antitrust litigation was commenced by current and former franchisees of the International House of Pancakes (formerly International Industries, Inc.) who claimed that certain of defendant's business practices constituted illegal "tying" arrangements.  Nine actions were transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings.  *In re International House of Pancakes Franchise Litigation*, 331 F.Supp. 556 (Jud.Pan.Mult.Lit. 1971).

The consolidated actions were declared to be maintained as class actions under the provisions of Rule 23(b)(1)(A) and Rule 23(b)(3), Fed.R.Civ.P., by order entered October 26, 1971.  That order created a class consisting of all existing franchisees who were operating as such on the date of the order and who did not request exclusion thereafter.  The order also established a subclass consisting of all former franchisees who were operating as such on or after March 13, 1966, but who ceased to operate as such prior to the date of the order and who did not request exclusion thereafter.[1]

---

1. It is this subclass that is involved in this order.  The claims of the "current franchisee" class have been disposed of through the settlement agreement hereinafter discussed.  The class action certification order directed the plaintiffs in *Rudolph Weth v. International Industries, Inc.*, No. 19665–2, and *Robert J. Helfenbein and Crescent Investments of Iowa, Inc. v. International Industries, Inc. and IHOP of Cook County, Inc.*, No. 17282–2, to act as representative plaintiffs on behalf of the subclass of former franchisees.

Following some proceedings on the issuance of a preliminary injunction,[2] the parties engaged in extensive discovery and settlement negotiations. An agreement was reached and the parties were heard on their motion for approval of the settlement agreement. The settlement agreement was disapproved by order dated July 12, 1973. 1973–2 Trade Cases, ¶ 74,616 (W.D.Mo.), *aff'd, In re International House of Pancakes Litigation,* 487 F.2d 303 (8th Cir. 1973). A second settlement was reached and the Court approved this agreement by order entered November 29, 1973. The portion of the Court's order approving the settlement agreement was affirmed. *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975), *cert. den.* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).

The provisions of the settlement agreement pertaining to the class of current franchisees are not pertinent here. Essentially, those provisions of the agreement mandated modifications in the terms of the franchise agreements. As to the subclass of former franchisees, the settlement provided for the payment of $500,000.00, not diminished by attorney's fees or costs, in seven equal annual installments. Of this amount, $100,000.00 was set aside for payment to those who were in the class of current franchisees as of the date of the establishment of the class, but who have since relinquished their franchise for any reason; *i. e.,* surrender, assignment, termination, etc. This is the so-called "limbo class." These individuals were given the option of accepting their proportionate share of the $100,000.00 or of obtaining a release of all debts and obligations to defendant. A number of the subclass members had sold their respective franchises back to defendant. On this transaction, they executed general releases in favor of IHOP. However, the Settlement Agreement made no distinction between those former franchisees who executed releases and those who sold their franchise to a third party, or for some other reason did not execute a release to defendant.

Paragraph 11 of the agreement provided that the proportionate shares of each subclass member would be calculated by a formula approved by the Court. The Court's order approving the settlement agreement directed class counsel to submit a proposed formula for the distribution of these funds.

Class counsel filed a motion for approval of formulae and procedures on June 10, 1975. With respect to both former franchisee subclass members and limbo class members, the motion stated that any claimant who had executed a general release in favor of defendant forfeited the right to participate in the settlement funds unless he could "affirmatively show" that the particular release he executed should not bar his right to assert this antitrust cause of action. Attached to the motion was a questionnaire to be sent to all subclass and limbo class members. This questionnaire specifically informed the claimant that he must "affirmatively show" the release he executed inapplicable in order to participate in the settlement proceeds. The Court approved these formulae and procedures and directed class counsel to implement those procedures to determine the rights of all class members by order entered July 23, 1975.[3] The questionnaires were mailed to all subclass and limbo class members. Class counsel filed his report regarding the eligibility of each claimant to participate in the settlement funds on June 16, 1976.

**2.** Plaintiffs initially sought to enjoin certain arbitration proceedings and a threatened unlawful detainer action in a state court. The Court denied plaintiffs' request and this action was affirmed. *Helfenbein v. International Industries, Inc.,* 438 F.2d 1068 (8th Cir. 1971). Thereafter, the Court entered a temporary restraining order enjoining defendant from terminating or threatening to terminate any franchises held by members of the class and from causing any class member to sign any document which would release any of his legal rights. A preliminary injunction was issued on January 6, 1972.

**3.** The specific provisions of these formulae are discussed *infra* in connection with the question of the effect of a claimant's realization of gain on the disposition of his franchise. See text at note 7.

## II.  CLASS COUNSEL'S REPORT

Based on the information obtained from reviewing the claims submitted by subclass and limbo class members, and the facts set forth in the questionnaires which were sent to all claimants, class counsel prepared and filed a report which dealt with four issues: (1) participation in the settlement funds by limbo class members; (2) participation in the settlement funds by claimants who were shareholders in corporate franchisees; (3) whether former franchisees who realized gain on the sale of their franchise should be entitled to a lesser proportionate share than those who suffered a loss or broke even; and (4) whether those claimants who executed general releases in favor of defendant should be entitled to participate in the settlement funds.

The report recommends that all limbo class members participate in the proceeds,[4] that the shareholders in the former corporate franchisees be barred from participation, that gain realized on the disposition of a particular franchise be deducted from the other damage factors, and that all subclass members who executed releases be barred from participation.[5]  Upon receipt of class counsel's report, the Court entered an order, directed to all claimants, to show cause why the report should not be accepted in toto.

None of the limbo class members filed objections to the report.  Four of the limbo class members, J. Bizar, K. Bowman, R. Varin and D. Failla, opted to take releases from defendant in lieu of participation in the funds.  In view of the lack of objection to this portion of class counsel's report, it will be approved and the Court will order class counsel to notify all limbo class members of their provisional eligibility to participate in the settlement funds, with the four exceptions noted above.

Several claimants filed objections to the recommendations of class counsel on the other three issues.  A hearing was conducted on these objections on July 12, 1977.  Each objecting subclass member was given further opportunity to file written objections to the recommendations of class counsel's report.  Several such objections have now been filed and are ready for a ruling.  Each of the remaining three issues will be discussed separately.

## III.  PARTICIPATION IN THE SETTLEMENT FUNDS BY SHAREHOLDERS OF FORMER CORPORATE FRANCHISEES

Class counsel's report recommends that two claimants be excluded from participation in the settlement funds because they were not the actual franchisees of defendant.  They were shareholders in a corporate franchisee.  The report states that both S. Brancati and A. Schwartz were minority shareholders in corporations holding their respective franchises and that defendant was the majority shareholder.[6]

Documentation which has been furnished to class counsel and to the Court (in the form of objections to the report) demonstrates that S. Brancati was a 100% shareholder of Betapan # 2, Inc.  The documentation also shows that A. Schwartz was a

---

4.  Only one limbo class member executed a release in favor of defendant, E. Richardson, Store # 434.  Class counsel deemed the release ineffective since it was executed after the Court certified this case as a class action and without Court approval.  The Court agrees with this analysis.

5.  R. Weth, Store # 4618, a representative plaintiff, executed a release but submitted affidavits and other documents which convinced class counsel that the release was invalid.  The report recommends that he be allowed to participate in the funds.  Apparently, class counsel took the view that Weth's responses amounted to an "affirmative showing" that his release was inapplicable.  The Court expresses no view on the correctness of such a conclusion in view of the holding on the issue of the effectiveness of the releases generally, *infra*.  See text at note 10.

6.  The Court's case file indicates that R. Dyckman, Store # 5301, also was a shareholder in a corporate franchisee, Olive-Woodson, Inc.  Class counsel's report does not mention this claimant on the issue of exclusion for that reason.  In view of the Court's resolution of the release issue, this claimant will be found provisionally eligible to participate in the settlement funds.

50% shareholder in Woodyburger No. 4, Inc. The remainder of the stock in the Woodyburger franchise was held by IHOP or one of its subsidiaries. Both franchisee corporations have been dissolved and the Court perceives no reason why the portion of the settlement funds which would have gone to the corporate franchisee should not go to the former shareholders. Any damages sustained by the corporate franchisee would be reflected in the decreased value of the individual claimant's stock. Accordingly, the Court holds that these two claimants are entitled to participate in the settlement funds to the extent of their stock interests in the corporate franchisees. Thus, A. Schwartz will be entitled to one-half of the proportionate share of the settlement funds allocated to Store # 726. S. Brancati will be entitled to the full proportionate share of the settlement funds allocated to Store # 602. Class Counsel will be directed to notify them of their provisional eligibility.

## IV. CLAIMANTS WHO REALIZED GAIN ON THE DISPOSITION OF THEIR FRANCHISE

Class counsel's report recommends that any gain realized by a former franchisee on the sale or other disposition of his franchise be taken into consideration in the computation of the claimant's proportionate share of the settlement funds. Two claimants have filed objections to this recommendation.

The formulae for distribution of the settlement funds were proposed in a motion filed by class counsel on June 10, 1975. By order of July 23, 1975, the Court approved the formulae and ordered them adopted for use in the determination of the rights of each subclass and limbo class member under the terms of the Settlement Agreement.[7]

Under the terms of the approved formula applicable to the former franchisee subclass, each franchise store will receive a separate allocated share of the settlement funds.[8] The share is to be determined by dividing the sum of four factors by the sum of all submitted claims to obtain a percentage figure. That percentage will be applied to the $400,000.00 settlement fund applicable to the subclass.

The four factors [9] are as follows:

1. A sum equal to fifty per cent (50%) of the total amounts paid as equipment lease rentals within the period covered by the class action from March 13, 1966, through October 26, 1971. This amount is included as representative of claimed overcharges for equipment rent.

2. A sum equal to one per cent (1%) of the gross sales of the particular franchisee store in the period from March 13, 1966, through October 26, 1971. This amount is included for overcharges involved in the "service charge" paid by the franchisees.

3. A sum equal to two per cent (2%) of the gross sales from each store location from March 13, 1966, through September 30, 1968, and a sum of one per cent (1%) of the gross sales of each franchise store location from October 1, 1968, through October 26, 1971. This amount is to reflect damages arising from claimed rebate practices of defendant.

4. The difference, if any, between the amount paid by each franchisee for a store location and the total amount received by the franchisee on his termination for sale of the franchise lo-

---

7. The motion set forth a formula applicable to the subclass and another formula applicable to the limbo class. The latter formula is not involved in this order. The motion also proposed that the rights of subclass members who ceased to be such subsequent to the approval of the Settlement Agreement be deemed to have passed to the presently operating successor of the particular IHOP franchise. This proposal was also approved in the Court's order of July 23, 1975.

8. Several subclass members operated more than one store.

9. The information necessary to compute these factors for each claimant was obtained from the questionnaires sent to each subclass member. See text at note 3, *supra*.

cation. This factor takes into consideration unwarranted charges and profits realized by defendant.

Class counsel's report requests clarification of the last factor. The factor has the effect of increasing the numerator of the percentage fraction by the amount of loss suffered by a subclass member on the disposition of his franchise. The larger fraction, of course, results in a larger proportionate share of the settlement funds for those subclass members who suffered such a loss. For those subclass members who broke even or realized a gain on the sale of their franchise, the fourth factor is zero.

■ Class counsel's report recommends that the fourth factor be interpreted so that any gain realized by a former franchisee on the sale of his franchise is subtracted from the other three damage factors. The suggestion is that this profit tends to mitigate the other damages. The recommendation will not be accepted since, in the Court's view, the formula already compensates for the difference in damages sustained by those claimants who realized a gain.

As noted above, those subclass members who broke even or realized a gain on the sale of their franchise will receive a smaller proportionate share of the settlement funds since the fourth factor for them is zero. Deducting gain from the other three damage factors would result in a further reduction of their share. There is nothing to indicate that subclass members who sold at a profit suffered any less than the other subclass members from the effect of equipment rent overcharges, service charge overcharges and defendant's rebate practices. Yet deducting gain as suggested by class counsel would effectively reduce the portion of the settlement funds attributable to those practices for the subclass members who realized such a gain. In other words, deducting gain from the first three damage factors reduces those subclass members' proportionate share unnecessarily. The fact that gain was realized is already taken into account since the fourth factor is zero for claimants in that situation. Accordingly, class counsel's proposed clarification of the damage formula will not be accepted and class counsel will be directed to compute shares using the formula as written and approved in the Court's order of July 23, 1975.

## V. THE QUESTION OF RELEASES

■ Class counsel's report recommends that those claimants who executed general releases in favor of defendant at the time the franchise was sold be excluded from participation in the settlement funds. This is the most troubling aspect of the report since acceptance of the recommendation would bar thirty of the forty-two claimants.[10] The Court views this issue as untimely raised. Acceptance of the recommendation would effectively redefine the classes in this case and would, therefore, amount to amendment and alteration of the class action certification order entered Oc-

10. As noted in footnote 5, *supra*, R. Weth, a representative plaintiff, executed a release but submitted appropriate documentation which convinced class counsel that the release was ineffective. Apparently, all known subclass members, with the exception of N. Suprunenko (Stores Nos. 301, 318 and 319), returned the questionnaire approved by the Court in the order of July 23, 1975. Whether the information they submitted amounts to the "affirmative showing" that the release they executed should not bar their claim is a question that does not need to be decided. It is enough for purposes of this decision that there exists a question with regard to the effectiveness of each claimant's release..

The Court could hold that only those claimants who filed objections to class counsel's report are entitled to participate in the settlement funds. This course of action would bar recovery for seventeen of the forty-two subclass members. Of course, the Court's order of June 16, 1976 directed all subclass members to show cause why the report should not be accepted "en toto." However, barring those subclass members who failed to object would amount to adopting the report in toto as to some claimants and not as to others. The Court is reluctant to adopt this inconsistency as a basis for a decision. In view of the Court's approach to class counsel's recommendation on the release issue, the effect of a claimant's failure to object need not be considered. All subclass members who returned the questionnaire will be ordered provisionally eligible to participate in the settlement funds.

tober 26, 1971. Although this is permissible action under the provisions of Rule 23(c)(1) and Rule 23(c)(4)(B), Fed.R.Civ.P., the Court declines to exercise its discretion in that manner.[11]

This case was premised on the existence of two classes of plaintiffs, current and former franchisees. The "limbo class" was created at the time the Settlement Agreement was approved.[12] Holding that releases bar recovery would require that the subclass of former franchisees be further subdivided to separate those subclass members who executed binding releases from those who did not execute such a release. Further subdivision would be required among those who executed releases to separate California claimants from non-California claimants.[13] The release recommendation must be considered a request for class redefinition because it is not being raised as an affirmative defense to liability. The question of liability is irrelevant since a Settlement Agreement has been negotiated and approved by the Court.

A situation similar to the one presented here arose in *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440 (E.D.Pa. 1975). The franchisor sued several franchisees for breach of contract. The franchisees filed counterclaims on behalf of all present and former franchisees alleging that certain features in the franchise contract violated the antitrust laws' prohibition on "tie-in" sales. When the franchisees moved for certification of the counterclaims as class actions, the franchisor raised the issue of general releases executed by some of the former franchisees.[14] The court refused to consider that issue at that time because the parties had not provided copies of the releases for the court's inspection. The court stated:

> It is unknown therefore whether a standard release and settlement form was employed that would present a common question or whether separate individual agreements were made. Moreover, it is unknown whether the releases and settle-

11. Such orders are discretionary and will only be reversed for abuse. *In re Cessna Aircraft Distributorship Antitrust Litigation*, 518 F.2d 213, 215 (8th Cir. 1975).

12. As noted elsewhere in this order, the current franchisee class members and the limbo class members are not involved in the issues raised by class counsel's report. See note 1 and text at note 4, *supra*.

13. California claimants have the benefit of section 1542, Cal.Civ.Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected his settlement with the debtor.

It appears fairly clear that state law would govern the effect of releases. *Three Rivers Motor Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975).

14. That would have been an appropriate time to raise the same issue in this case. The presence of the releases would have been relevant to the prerequisites of class action certification set forth in Rule 23, Fed.R.Civ.P. If the issue had been raised at that time, though, the Court might have refused to certify the class action.

Since state law controls the effect of the releases, see note 13, *supra*, the factual circumstances of each person who executed a release would have to be considered. This would cut

against class action certification. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 335 (N.D.Ill.1974).

The fact that the Court would have had to examine the law of several states would have also cut against certification. *Chmieleski v. City Products Corp.*, 71 F.R.D. 118, 169 (W.D. Mo.1976). The fact that the releases would have been raised defensively would not have prevented their consideration at that time. *In re Transit Company Tire Antitrust Litigation*, 67 F.R.D. 59, 72 (W.D.Mo.1975).

The presence of releases would have been relevant to the ability of the named plaintiffs to adequately represent the interests of absent class members since the named plaintiffs did not execute binding releases. See note 5, *supra*. Since state law would determine the effectiveness of each release and since each claimant would be raising the claims of fraud, failure of consideration, estoppel, lack of mutuality, etc., that have been raised in opposition to class counsel's report, the presence of releases would have been relevant to the issues of "manageability" and "superiority." Rule 23(b)(3), Fed.R.Civ.P.

Finally, the creation of the four subclasses mentioned in the text would have created "numerosity" problems since each subclass must meet the requirements of Rule 23. *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co.*, 511 F.2d 1073, 1077 (10th Cir. 1975).

ment agreements have any bearing on this case as there is no indication that the releases and settlement agreements cover any of the antitrust claims raised by Tayloe and Paro in this action. Until such time as these releases and settlement agreements are presented, no determination can be made as to the possible effect these items may have on the propriety of this action proceeding as a class action.

\* \* \* \* \* \*

It is entirely premature, therefore, to deny the class action motion on the basis of this alleged potential conflict. It may be added that under Rule 23(c)(1) class action certification is always subject to amendment or alteration at any time prior to decision on the merits. If at a later time, a clear and definite conflict among the former franchisees is established, appropriate measures may be taken.

*Id.,* at 451.

The "appropriate measures" referred to by the *Aamco* court were taken when both parties moved for summary judgment on the issue of liability. *Aamco Automatic Transmissions, Inc. v. Tayloe,* 407 F.Supp. 430 (E.D.Pa.1976). The court stated:

The class will be redefined, whereby those franchisees who have executed general releases in favor of Aamco will be eliminated from the class. *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 895 (3d Cir. 1975), makes clear that a franchisee's general release to the franchisor operates as a release and bar to all antitrust claims, whether known or unknown . . .

The class as originally defined would have included those franchisees who executed general releases. On an individual basis, Aamco could have asserted the general releases as a complete defense, shifting the burden to plaintiff to establish the invalidity of such releases on an individual basis. Because there would be

separate factual issues as to each franchisee who had executed a general release, class action treatment as to such franchisees would seem inappropriate.

As to those franchisees who have executed general releases, summary judgment in favor of Aamco might be appropriate. I have decided, however, to redefine the class so that franchisees who may have executed general releases will not be precluded, as individual franchisees, from bringing action and contesting the validity of the release. The class will henceforth consist of only those former Aamco franchisees who otherwise meet the class requirements and who have not executed a general release in favor of Aamco prior to the filing of this action.

*Id.,* at 433.

▮ The recommendation of class counsel on the release issue is consistent with the approach taken in *Aamco.* Acceptance of the report would redefine the classes. However, in this case, a settlement has been negotiated and approved. The release issue was not raised by defendant at that time. It is immaterial to IHOP who receives what portion of the $500,000.00 that it is obligated to pay in any event. There is nothing in the Settlement Agreement to indicate that it was intended to be for the benefit of less than the entire class. The Court can only assume that defendant settled this case after considering its potential liability to the entire class. The release issue was not raised on appeal from this Court's order approving the agreement. See, *Grunin v. International House of Pancakes,* 513 F.2d 114, 123–125 (8th Cir. 1975), *cert. den.,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). Unlike the situation in *Aamco,* it is unclear whether those former franchisees whom class counsel recommends be excluded would be able to pursue individual remedies.[15] More importantly, the Court has

**15.** If the classes were redefined, it could be argued that the four-year statute of limitations, 15 U.S.C. § 15b (1973), was tolled while this case was pending. See, *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 552–

554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1973), *reh. den.* 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974). Unlike American Pipe, however, a settlement agreement would precede class redefinition in this case. The Court does not view

approved a Settlement Agreement that purports to be for the benefit of all subclass members. It would not be fair to either the defendant or the claimants to redefine the class at this point since both would in all likelihood be forced to litigate issues that were supposedly finally settled in this case.

■ Accordingly, the Court declines to redefine the subclass and views the issue of releases as untimely raised. The case has been settled and absent claimants have relied on their inclusion in the subclass. See, 3B *Moore's Federal Practice*, ¶ 23.77, p. 23–1491. The Court has a continuing duty to protect the interests of absent class members and to guard against conflicts of interest.[16] Consideration of the release question on the merits would unnecessarily create intraclass conflicts of interest mandating alteration and amendment of the class action certification order. That order was entered over five years prior to class counsel's report. It is too late to alter it now. Class counsel's recommendation with regard to claimants who executed releases will not be accepted and class counsel will be directed to notify such claimants of their provisional eligibility.

## VI. CONCLUSION

Class counsel's report will be accepted in part and rejected in part as indicated in this order. The Court holds that the former franchisee subclass members listed in Exhibit A attached hereto are provisionally eligible to participate in the settlement funds and that the limbo franchisee subclass members listed in Exhibit B attached hereto are provisionally eligible to participate in the settlement funds.

Class counsel is instructed to notify such class members of their provisional eligibility by certified mail, return receipt requested, at their last known addresses requesting acknowledgment within 30 days to complete eligibility status. Only those class members that class counsel is able to so contact and who so respond within 30 days of receipt of such notice shall remain eligible to participate in the settlement funds. When such identity has been established, class counsel shall calculate each eligible participant's share, shall prepare appropriate notes for execution by defendant, and shall distribute such notes to the payee eligible class members by certified mail, return receipt requested. When all of this has been accomplished, class counsel shall prepare a report for the Court.

IT IS SO ORDERED.

### EXHIBIT A

LIST OF CLAIMANTS PROVISIONALLY ELIGIBLE TO PARTICIPATE IN THE SETTLEMENT FUND FOR SUBCLASS OF FORMER FRANCHISEES

| Claimant | Store Number | Claimant | Store Number |
|---|---|---|---|
| I. Freeman | 607 & 610 | T. Frank | 702 |
| | | R. Gibson | 412 & 419 |
| F. Garside | 721 | I. Goldstein | 711 |
| R. Helfenbein | 1301 & 1304 | | |
| | | S. Granda | 1221 |
| W. Larimer | 716 | | |
| | | R. Harvey | 1208 & 1211 |
| J. Mancino | 407 | | |
| M. S. Parker | 615 | C. Hess | 1305 |
| R. Perrotta | 1214 | R. Hollans | 617 |
| M. Rubenstein | 702 | S. Kreiger | 418 |
| M. Seltzer | 608 & 620 | R. Latiff | 1213 |
| | | S. Litwin | 1202 |
| T. Val Rose | 1212 | | |
| | | N. Locilento | 46–5 |
| R. Weth | 4618 | | |
| | | J. S. Mancilla | 709 |
| L. Berkowitz | 4610 | | |
| | | J. Mancino | 402 |
| W. Blalock | 413 | | |
| | | D. Murray | 713 |
| S. Brancati (Betapan #2, Inc.) | 602 | G. Rossof | 4706 |
| R. Bubak | 615 | * A. Schwartz (Woodyburger No. 4, Inc.) | 726 |
| H. Chermak | 4636 | | |
| D. Daniels | 4617 | A. Spier | 728 |
| S. Dorn | 1307 | R. Terrell | 1302 & 1306 |

the ability of any of the claimants to pursue individual claims as in any way crucial to the decision not to redefine the subclass.

16. *Handwerger v. Ginsberg*, 519 F.2d 1339, 1342 (2d Cir. 1975). See generally, Renfrew, Negotiation and Judicial Scrutiny of Settlements in Civil and Criminal Antitrust Cases, 70 F.R.D. 495, 499–500 (1976); 7A Wright & Miller, Federal Practice and Procedure, § 1797, p. 226.

**388**

EXHIBIT A—Continued

LIST OF CLAIMANTS PROVISIONALLY ELIGIBLE TO PARTICIPATE IN THE SETTLEMENT FUND FOR SUBCLASS OF FORMER FRANCHISEES

| Claimant | Store Number* | Claimant | Store Number |
|----------|---------------|----------|--------------|
| M. Duskin | 4619 | | |
| | | R. West | 625 |
| R. Dyckman (Olive-Woodson, Inc.) | 5301 | | |
| | | L. Zaker | 3 |
| | | S. Alaimo | 46–8 |
| G. Ellis | 609 | | |

\* Claimant to receive 50% of proportionate share

The Court's case file indicates that A. Kallis, Store #731, and N. Suprunenko, Stores #301, #318 and #319, did not file the required information necessary to compute their respective proportionate shares. Accordingly, they are not eligible to participate in the settlement funds.

EXHIBIT B

LIST OF CLAIMANTS PROVISIONALLY ELIGIBLE TO PARTICIPATE IN THE SETTLEMENT FUND FOR LIMBO CLASS FORMER FRANCHISEES

| Claimant | Store Number |
|----------|--------------|
| J. Andonian | 611 & 614 |
| B. Balliet | 412 |
| D. Choate | 804 |
| N. Clementi | 46–18 |
| S. D'Asero | 18–7 |
| M. Flynn | 1332 |
| F. Householder | 501 |
| A. Mullins | 424 |
| E. Richardson | 434 |
| M. Sembric | 512 |
| B. Smith | 616 |
| L. Townsend | 418 |
| A. Weisenfeld | 491 |