**Judy VAN ALLEN et al., Plaintiffs,**

**v.**

**The CIRCLE K CORPORATION, a Texas corporation, Defendant.**

**No. 71–2535 FW.**

United States District Court,
C. D. California.

Sept. 22, 1972.

Gitelson, Katz, Hoyt & Blum by Leslie F. Bell, Peter R. Stoll, Los Angeles, Cal., for plaintiffs.

Lawler, Felix & Hall by John G. Wigmore, J. Richard Morrissey, Los Angeles, Cal., for defendant.

## ORDER DENYING MOTION THAT THIS ACTION BE MAINTAINED AS A CLASS ACTION

WHELAN, District Judge.

In this action plaintiffs have made a motion that this action be maintained as a class action pursuant to F.R.Civ.P. 23(c)(1). The defendant opposes such motion.

The named plaintiffs purport to represent different classes although plaintiffs' counsel contends there is only one class. Plaintiff Van Allen purports to represent a class comprised of all persons whose franchise agreements with defendant have terminated; plaintiff Haardt purports to represent a class comprised of all persons who, although presently under franchise agreements with defendant, have been given notice that defendant will terminate their agreements respectively; and plaintiff Doll purports to represent a class comprising all remaining persons presently under agreement with defendant. Defendant operates grocery stores and also has license or franchise agreements with independent operators who under the terms of such license agreements conduct their grocery businesses under the name of "Circle K" stores. With certain exceptions the independent operators mentioned obtain their inventory items directly from independent suppliers. The supplier delivers the merchandise to the independent operator's store and the invoices therefor are then forwarded by the independent operator to Circle K which pays the invoice and debits the independent operator's account for that amount. Any quantity discounts received by Circle K from suppliers attributable to purchases by independent operators are paid to the latter by Circle K. From time to time some inventory items have been supplied to various independent operator stores by defendant. With the exception of stores in the Phoenix, Arizona, area the merchandise supplied by Circle K to independent operator stores accounts for about 2% of the sales of such stores. With respect to the Phoenix area wherein Circle K has supplied dairy products to independent operators, the amount of merchandise supplied by Circle K to independent operators is in a larger percentage.

The showing by defendant is that merchandise supplied to independent operators by Circle K is sold to the independent operators at prices no higher than the same or equivalent items would cost from other suppliers. Defendant's showing is also that most of the items supplied by Circle K to the independent operators have been supplied because there are no independent suppliers adequately servicing the area of the independent operator involved. The affidavit of the vice president of defendant corporation states that the independent operators are not required to accept the merchandise supplied by Circle K.

The latter mentioned affiant further states that in any particular marketplace items within each category of an inventory carry as a part of the retail price thereof a standard markup percentage above the wholesale price.

This is not a case in which the joinder of all persons mentioned by the named plaintiffs as possible co-plaintiffs would create an unmanageable piece of litigation. First, with respect to present franchisees, to wit, independent operators, there were as of October 21, 1971,

the date of filing of the complaint, only 54. Certainly if we were to be concerned only with present independent operators there would be no reason why all of them could not be joined as named plaintiffs if they are in fact interested in litigating with defendant.

Second, only 100 agreements, concerning 95 independent operators, with defendant had been terminated as of the date of filing of the complaint. Thus the total number of independent operators past and present as of the date of filing of the complaint was 149. According to the record, 27 of the terminated agreements between independent operators and defendant had been terminated by the independent operators as to such agreements respectively. Further, 39 of such terminated agreements according to the record had been terminated pursuant to mutual agreement between the particular independent operator and defendant. Thus only 34 of the terminated agreements have been terminated by defendant.

Even if all past and present independent operators as plaintiffs and not as members of a class desire to litigate the question of their respective agreements against defendant, there would be only 149 plaintiffs and such number would not create an unmanageable piece of litigation. Also there would have to be a completely different presentation of proof as to each such possible plaintiff on the question of damages, if any,—in other words each plaintiff would have a different law suit after all.

Further, it would appear from the record that the interest of the suggested classes would be adverse. Those members of the suggested class who are at present independent operators would seem to be interested in carrying on their operation with a strong defendant able to perform his obligations and able to create a favorable public attitude toward the name Circle K. Those members of the suggested class of former independent operators would be indiffer-

ent to anything other than financial recovery to the fullest extent from defendant if they were interested in litigating against defendant.

Further, it clearly appears that the common questions are far outweighed by those questions of fact and law which are not common to all plaintiffs.

Under the ruling of the Court of Appeals for the Ninth Circuit in Chicken Delight, Inc. v. Harris, 412 F.2d 830 (1969), it would appear that the only common issue to all members of the suggested classes is that relative to provisions in defendant's standard form of franchise agreements. The Court of Appeals in the cited case held that the determination of the pricing issue would involve significant different evidence and separate factual determinations as to each separate franchisee and that to impose the burden of determination of such latter issue on a class basis would be inconsistent with the purpose of Rule 23, F.R.C.P.

In the later phase of the case just mentioned the Court of Appeals for the Ninth Circuit in Siegel v. Chicken Delight, 448 F.2d 43 (1971), held that factual issues must be determined as to the value of both tying and tied products free from the tying arrangement.

Also it appears that more than half of the present franchise holders of defendant are located in Arizona and, as mentioned, some of the independent operator stores in the Phoenix area have been supplied dairy products as contrasted to independent operators in other areas which were not so supplied. It further appears from the record that not all independent operator stores have been supplied the same inventory items by defendant (independent of dairy items).

As heretofore stated, the joinder of all members of all of the suggested classes is not impracticable. Further, it appears that the difference between the classes is such that the maintenance of a class action involving all of them would

not be consistent with the purpose of Rule 23. The claims of one suggested class would not be typical of any of the other suggested classes.

It further appears that the alleged representative plaintiff of any of the suggested classes would not fairly and adequately protect the interests of such suggested class. Plaintiff Doll is not a franchisee; plaintiff Haardt is not a person whose franchise is being terminated; and plaintiff Van Allen can't represent the interest of any of the other members of the class in showing injury.

Here the prosecution of separate actions by individual members of the suggested class or classes would not create a risk of inconsistent or varying adjudications. It would seem that, under the doctrine of collateral estoppel, defendant, if there were a determination that its license agreement constituted an antitrust violation in an action brought by an independent operator, would be estopped from denying that its agreement constituted an antitrust violation in any subsequent action brought by another independent operator. Further, it clearly appears under the rule of the *Chicken Delight* cases that adjudications with respect to damages suffered by any independent operator as a result of conduct of the defendant constituting an antitrust violation would not as a practical matter be dispositive of damages suffered by any other independent operator or operators.

The Court finds that the questions of law or fact affecting individual store operators whether past or present predominate over the questions of law or fact common to the members of the suggested class or classes. The Court finds that the common questions of law or fact affecting the suggested class do not predominate over any questions affecting only individual members. The Court further finds that in this case a class action is not superior to other available methods for the fair and efficient adjudication of the controversy.

The Court further finds that where more than half of the present members of the suggested class of present independent operators are located in the State of Arizona it is undesirable to concentrate the litigation of such claims, if any, in this Central District of California. It is noted that at the present time, according to the record, California has only nine independent operators.

The Court further finds that where more than a half of the past independent operators are located outside of the State of California, with practically half of them to be found in Arizona and New Mexico, it is undesirable to concentrate the litigation of the claims of such past independent operators, if any there be, in the Central District of California. It is noted that nearly a third of the past independent operators are located in the State of Arizona.

The Court further finds that difficulties would be encountered in the management of this suggested class action in that each independent operator whether past or present would be required to present a full case on the question of damages in the event of an adjudication of an antitrust violation. Also it is noted that with respect to plaintiffs' charge of attempted monopolization and monopolization by defendant, it is clear from the record that the common questions of fact affecting the suggested class do not predominate over the questions affecting individual members for the reason that there are many different market areas involved. As mentioned, it is actually easier, therefore, to process litigation involving individual suits by individual claimants than it is to attempt to conduct a class action in this case. Accordingly,

It is ordered that this action shall not be maintained as a class action and the motion of plaintiffs that this action be maintained as a class action is denied.