Michael BARRETT et al., Plaintiffs,

v.

THOROFARE MARKETS, INC., et
al., Defendants.

Civ. A. No. 76–61.

United States District Court,
W. D. Pennsylvania.

Nov. 17, 1977.

Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for plaintiffs.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant Thorofare.

Jubelirer, McKay, Pass & Intrieri, Pittsburgh, Pa., for defendant Union.

## OPINION

WEBER, District Judge.

The named Plaintiffs in this case are all members of Defendant Local 635 of the Teamsters International Union and were all employed by Defendant Thorofare Markets at its Murraysville, Pennsylvania warehouse until that facility was closed in September 1974.[1] Plaintiffs claim that Thorofare has wrongfully paid them a smaller sum of severance pay than was received by the members of other locals employed at the same facility and has wrongfully determined that none of them will in future be entitled to early retirement pensions at the age of 55. The plaintiffs claim that their local union[2] is liable along with Thorofare, on all counts of the complaint. Plaintiffs have now moved for class certification which is vigorously opposed by the Defendants.

---

1. Defendant Thorofare has alleged that some of these named plaintiffs were employed at its Smallman St. warehouse and not at the Murraysville facility.

2. Plaintiffs' Amended Complaint also joined the International Union, which never filed an answer. By order of this court and according to a stipulation of the present parties the International has since been dismissed.

The problems presented to this Court by this motion can only be understood against a complete background of the facts alleged by the plaintiffs, taken in the light most favorable to them, and the legal theories under which these facts are supposedly sufficient to make either or both of these defendants liable for monetary damages.

Sometime before September 26, 1974, Thorofare decided to close its Murraysville warehouse. At that time members of Local 635 and of three other locals of the Teamsters were employed at that facility; all these employees were to be laid off. Thorofare bargained with the local unions about the impact of the lay-offs. Again sometime before September 26, Thorofare offered $195,000 to be divided among all the employees at the warehouse at an equal rate per year of service and conditioned this offer on acceptance of all four locals. A meeting of all four unions was held on or about September 26, 1974, at which officials of the union announced the terms of the offer. It appears that when the vote was taken, the named plaintiffs, (who were scheduled to work for at least several months at another of Thorofare's facilities) were not permitted to vote on it. All other employees at the warehouse—that is, members of all four local unions—voted on the proposal and apparently accepted it. We have no way of knowing, from the complaint or from any other pleadings, whether the locals voted separately or whether plaintiffs' votes could have affected the outcome. At any rate representatives of the company and Local 635 signed a separate agreement to which the other locals were not parties. All members of Local 635, including the plaintiffs who worked for several more months at another location (the Smallman St. warehouse) before being laid off, received severance pay equal to $40. per year of service. Members of the other three affected locals each received $100 per year of service.

It is asserted that Thorofare and Local 635 are liable to each of the 139 members of Local 635 who were eventually laid off from the Murraysville warehouse for the difference between the amounts of severance pay received by each of them in severance paid and the amounts paid to individual members of the other three locals.

The second substantive count of the complaint, as amended, alleges that Thorofare, in the course of collective bargaining, entered into a contract with Local 635 which entitled the employees to certain pension benefits, including early retirement pensions at age 55. Subsequent to the lay-offs, defendant Thorofare clearly indicated that it will not pay early retirement pensions to any member of Local 635 who had not reached the age of 55, and accumulated 15 years of service before the effective date of the lay-offs. This refusal to pay the claimed benefits is allegedly wrongful; the plaintiffs, claiming a right to such benefits, "pray that Defendant Thorofare be ordered to grant them an early retirement pension as of their last day of employment with Thorofare . . . ." In addition the alleged failure of Thorofare and the Local Union to "disclose to the plaintiffs in question the non-availability of an early retirement pension . . ." was "prejudicial to each plaintiff" and violative of both the anti-fraud provisions of the Securities Acts, (Section 17(a) of the 1933 Securities Act, 15 U.S.C. 77q, and Section 10(b) (and Rule 10b–5) of the 1934 Securities Act, and of 15 U.S.C. 78j(b) and of their union's "common law trust and fiduciary duty to the plaintiffs." Finally, the Local Union allegedly violated Section 302(c)(5) of the National Labor Relations Act, 29 U.S.C. 186(c)(5), by its support of "Defendant Thorofare's Pension Plan to the detriment of the plaintiffs. . . ."

Plaintiffs now move for a certification of the following two classes:

CLASS I. "The class of Plaintiffs consisting of approximately several hundred former employees of Defendant Thorofare's Murraysville, Pennsylvania warehouse who received severance pay of only $40.00 per year of service," and

CLASS II. "The class of Plaintiffs consisting of approximately several hundred former employees of Defendant

Thorofare's Murraysville, Pennsylvania warehouse who have completed 15 or more years of continuous service with Thorofare but who have not attained the age of 55 at the time Thorofare shut down the warehouse and who are currently being denied early retirement pension option, disability retirement pension option, and joint survivor pension option."

Plaintiff seeks certification under Rule 23(b)(1)(B) or, in the alternative, under Rule 23(b)(3). All class actions must meet the requirements of 23(a) which provides as follows:

"1. The class is so numerous that joinder of all members is impractical.

2. There are questions of law and fact common to the class.

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class.

4. The representative parties will fairly and adequately represent the class."

Rule 23(b)(1)(B) is satisfied when, in addition,

"(1) The prosecution of separate actions by or against individual members of the class would create a risk of B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

Finally, 23(b)(3) is satisfied when the requirements of 23(a) are met and

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions:

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class:

(C) the desirability or undesirability of concentrating the litigation in the particular forum:

(D) the difficulties likely to be encountered in the management of a class action.

It appears from an affidavit by Kenneth K. Keene, Director of Personnel and Labor Relations for Thorofare, that 139 persons, all members of Local 635, received severance pay at the rate of $40. The total number of Thorofare employees at the Murraysville warehouse (exclusive of the named parties) who had accumulated a minimum of 15 years of continuous service at the time of closing was 80, of whom only 50 were members of Local 635. Four of these 80 have since attained the age of 55; we have not been told how many of these four employees were members of Local 635.

█ Thorofare opposes the certification of either or both of these classes on almost all conceivable grounds, as is the customary practice of defense counsel in this kind of case.[3] Because Plaintiffs ask for the certification of two different classes, we must deal with each requirement of the rules applicable to each proposed class. The disparate claims of the two classes in this case arise out of a common nucleus of fact but require the application of differing theories of law. This does not appear to us as a significant barrier to certification. Nothing in the Rules prevents the certification of two separate classes. Plaintiffs undoubtedly could have filed two separate lawsuits raising the same claims and sought certification in each. Any difficulties resulting from the joinder of these claims,

---

**3.** We do not understand why defense counsel invariably oppose the certification of a class; in cases where a strong defense is apparent from the onset, as, for example, the res judica- ta defense asserted in this case to the pension claims, it may be to the defendant's advantage to settle the potential claims of multiple plaintiffs in a single action.

either those arising solely out of the nature of a class action or ordinary evidentiary or manageability problems, could be dealt with at the time of trial through a severance of the issues.

PROPOSED CLASS I (The Severance Pay Class)

■ That a plaintiff must be a member of the class he seeks to represent is well established. *Haas v. Pittsburgh National Bank*, 526 F.2d 1083 [3d Cir. 1975]. This standing requirement is inherent in Rule 23, and is not satisfied merely because the named plaintiffs have certain characteristics in common with members of the requested class. Rather, the named representatives must also be personally affected and harmed by the defendant in the same manner as the requested class. See, e. g. *Broomer v. Schultz*, 239 F.Supp. 699 [E.D. Pa.1965], *aff'd per curiam* 356 F.2d 984 [3d Cir. 1966].

■ Defendants argue that, as the named plaintiffs were not terminated at the same time as all other members of the proposed severance pay class[4], the plaintiffs lack standing, have interests conflicting with those of other members of the proposed class and have atypical claims. We recognize that, should it later be determined that, in the light of this fact, the alleged contract as to equality of severance pay did not by its terms apply to the Plaintiffs, they would not have standing and could not adequately protect the interests of those to whom the agreement did apply. However, at this stage, we are not concerned with the merits of plaintiffs' case. While the complaint herein does not speak to this point, the affidavits of four of the original plaintiffs which were filed in support of the class action motion all aver, somewhat murkily but with sufficient clarity for our purposes, that the Plaintiffs received severance pay and were entitled to more under the terms of the agreement

allegedly finalized on September 26. Assuming this to be true, as we must, we find that subdivisions (2), (3) and (4) of Rule 23(a) are all satisfied at this time. Finally, we conclude that a class of 139 members is so numerous that joinder is impractical and, therefore, that subdivision (1) of the Rule has also been met. *Fox v. Prudent Resources Trust*, 69 F.R.D. 74 [E.D.Pa.1975].

Next, we must determine whether either Rule 23(b)(1)(B) or Rule 23(b)(3) is an appropriate vehicle for the certification of this class. Rule 23(b)(1)(B), quoted *supra*,

> "takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representations in the lawsuit."

Advisory Committee Notes, quoted at 3B Moore's Federal Practice ¶ 23.35[2], p. 23–601.

■ Although clause B may apply "where claims are made by numerous persons against a fund that is insufficient to satisfy all claims, so that satisfaction of one claim will impair the interests of other claimants," *id.* at 23–604, and see *e. g.*, *Walker v. City of Houston*, 341 F.Supp. 1124 [S.D.Tex.1971], the mere fact that stare decisis could affect the likelihood of recovery in another action is insufficient to justify a (b)(1)(B) certification, *Larinoff v. United States*, 175 U.S.App.D.C. 32, 533 F.2d 1167 [1976]; *Kristiansen v. John Mullins & Sons, Inc.*, 59 F.R.D. 99 [E.D.N.Y. 1973]. Clearly Plaintiff's claim for damages only could have no effect other than that of stare decisis or collateral estoppel on the rights of others with similar claims against the defendants. Different arguments could have been made to support these claims which could result in favorable

---

4. Kenneth Keene's affidavit, submitted by Thorofare, avers that all of the named plaintiffs either worked at the Smallman Street warehouse at the time the Murraysville facility was closed or were transferred there and worked for some time longer than did the other putative class members.

judgments for these others even should plaintiffs lose this case before the jury they demanded. On the other hand, if plaintiffs should win in this case, their fellow employees could hardly suffer any prejudice. Finally, the anomaly of a class action brought by all the members of a union against the union for breach of a duty of fair representation is the strongest argument (not, incidentally, raised by any of the defendants) against a (b)(1)(B) certification. This court believes that, if this suit is maintainable as a class action at all, each member of the proposed class should have the option to opt out which is available only under (b)(3).

██ Finally, we conclude that this action is maintainable as a class action under 23(b)(3). The question of whether the Defendant Thorofare bound itself to pay all of its employees being laid off equal amounts of severance pay is the most important question of fact and is common to all members of the class. We find that a class action is superior to other available methods for the fair and efficient adjudication of this aspect of the case. As Judge Fullam stated in *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452 [E.D.Pa.1968]:

"[W]hen it is established that there exists a genuine class of litigants pressing similar assertions, and that the common questions predominate, the proper function of the court is to apply the Rule in a manner best calculated to serve the following objectives.

(1) To process the large number of claims with the least possible strain upon the resources of the court system; (2) To eliminate 'one way intervention,' and make known in advance which claimants or potential claimants can be expected to be bound by the judgment; (3) to avoid encouraging the solicitation of claims and other unsavory practices; (4) to avoid enlarging or shortening the applicable period of limitations and (5) to advance, or at least not prejudice, recognized goals of public policy." (footnotes omitted). 43 F.R.D. at 459.

We believe that these objectives will be best served by the certification of a class of all the members of Local Union 635 under Rule 23(b)(3) to pursue their claim for additional severance pay. At the same time, we feel constrained to express substantial doubt as to whether the complaint on this ground could withstand a motion to dismiss or for summary judgment filed by either of the defendants [5]; we recommend that as soon as possible, the complaint should be tested through the available procedural mechanisms.

PROPOSED CLASS II (The Pension Claim Class).

██ The pension claims involved in this case may or may not be suitable for class action treatment, but, from the record before us, we are now unable to make that determination. As noted above, plaintiffs rely on the collective bargaining agreement in effect at the time the lay-offs were announced to establish their right to certain pension benefits. No copy of this agreement has been filed or presented to this Court. The plaintiffs allege conclusorily that members of all four local unions em-

---

**5.** Rule 23 requires that a trial court rule on a motion for class certification "as soon as practicable." Because we perceive many difficulties with plaintiffs' severance pay claims, we would have preferred, but for this requirement, to rule on the substantial issues raised by the various answers filed herein before determining the instant motion.

The Court wishes to note at this time its puzzlement over the following points:

(1) How can a local union possibly breach its duty of fair representation to its entire membership?

(2) What are the alleged false representations made by Thorofare to these plaintiffs?

(3) What are the terms of the collective bargaining agreement relevant to Thorofare's duty to Local 635's membership upon a lay-off? Could this claim for severance pay have been submitted to arbitration under that agreement? Was arbitration the *sole* method of redress for this grievance?

(4) Do plaintiffs assert that the fraudulent acts of the defendants herein occurred at the time the oral contract, which came into effect upon the acceptance of the locals (all four) to Thorofare's offer by a joint vote, was reduced to writing?

ployed at the Murraysville warehouse were covered by the same pension plan; presumably, a single contract covered all four locals, or all the contracts to which the separate locals were signatories contained identical language on this point.

Defendant Thorofare argues that the question of whether a member of the class which Plaintiffs seek to represent is entitled to the pension benefits claimed, specifically, the early retirement pension is not available to any individual until that person reaches the age of fifty-five, and, since, only four persons not already receiving such pensions have turned 55 since the lay-offs, the class is not sufficiently numerous to justify certification. We do not accept the argument that plaintiffs can only represent those former employees who are "currently" being denied such benefits, at least in the sense in which Thorofare uses the word "currently." Thorofare has clearly set forth its position; when and if any former employee at the Murraysville warehouse reaches the minimum age for an early retirement pension applicable under the pension plan in effect at the time of the lay-offs, his right to the early benefits will not be recognized even though he has otherwise met the requirements. A separate adjudication of each employee's rights to the early benefits as each individual's birthday rolls around would be a ridiculous requirement in these circumstances.

However, the flaw in plaintiffs' pleading here will not permit us to certify a class on this point. From the papers before us, as well as from the record in Civil Action No. 75–465 in this District, *Thorofare Markets, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 and Grocery and Food Warehousemen Local Union No. 635*, affirmed in large part by the Third Circuit *per curiam* at 457 F.2d 1164 [3d Cir. 1977], the merits of Plaintiffs' claim appear extremely doubtful. Even without reliance on the probable res judicata effect of that case on the within complaint, we must take notice that the collective bargaining agreement herein on which these plaintiffs rely to establish their rights to pension benefits required that grievances over the interpretation or application of the collective bargaining agreement be submitted to arbitration. In such cases, the rule of *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 [1967] applies and the plaintiffs can establish the jurisdiction of this court only by first alleging that the Defendant Local 635 arbitrarily and capriciously failed or refused to prosecute their grievances or, perhaps, so failed to *adequately* present the grievance or prosecute the civil action or appeal related thereto. Plaintiffs have not so alleged. In any case, we fail entirely to see how these Plaintiffs may, under *Haas, supra* adequately represent members of *Local Unions to which they do not belong* where the cause of action can only succeed if a breach of the duty of fair representation which each such local union owes to its own members is alleged and proved. We have not been provided with adequate numbers to state precisely how many potential claimants are members of Local 635, to which all the named plaintiffs do belong, see pp. 24–25 *supra*. Our best guess from the affidavits presented to us is that the number would be approximately 50. A group of 50 claimants would not necessarily be inappropriate for class action treatment; in this case we would, however, be inclined to conclude that, even were the evidentiary material before us sufficient to justify a finding that fifty individuals were similarly situated with respect to this claim, class action treatment on this point would not be the best way to administer the action. See *Philadelphia Electric Company, supra*. Therefore, the Motion to certify the second proposed class will be denied on this point.

## ORDER

AND NOW this 17th day of November, 1977, the motion of plaintiffs for class action with respect to the severance pay issue is GRANTED, and a class of plaintiffs is hereby declared to include the following:

The class of Plaintiffs shall consist of all former employees of defendant's Thorofare Markets, Inc., who were members of Local No. 635 of the Teamsters Union

and who were employees at the defendant's Murraysville, Pennsylvania, warehouse at the time of its closing, and who received severance pay in the amount of $40 per year of service at the time of their separation from employment. This certification is made in accordance with Federal Rule of Civil Procedure 23(b)(3).

Counsel for the plaintiffs are directed to prepare and submit to opposing counsel and to this court a form of notice as required by Section 23(c)(2) to provide the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Said notice, together with any objection by the opposing party as to the form of the notice, or the manner of giving notice shall be submitted to this Court by the parties on or before the *9th day of December, 1977.*

Plaintiffs' Motion for certification of a class of persons asserting a claim under pension rights is DENIED.