### In re ANTHRACITE COAL ANTITRUST LITIGATION.

**MDL No. 293.**
**Civ. A. No. 77–867.**

United States District Court,
M. D. Pennsylvania.

May 26, 1978.

Lee A. Freeman, Sr., D. Alan Harris, Chicago, Ill., for plaintiff.

Edward F. Mannino, Karin Marek McAlinn, John F. Stoviak, Gary S. Turetsky, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., Ann S. Pepperman, McNerney, Page, Vanderlin & Hall, Williamsport, Pa., for defendants Lehigh Valley Coal Sales Co., Inc. and Reading Anthracite Coal Co.

Edwin P. Rome, Richard P. McElroy, Frederica Massiah-Jackson, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for defendants Greenwood Stripping Corporation and Lehigh Navigation-Dodson Co.

Leon H. Kline, Philadelphia, Pa., for defendant Glen Burn Colliery, Inc.

James C. B. Millard, Jr., New York City, for defendant Blue Coal Corp.

H. Kenneth Kudon, Danzansky, Dickey, Tydings, Quint & Gordon, Washington, D. C., for defendant Joseph A. Frank.

James D. Watt, Jr., Pottsville, Pa., for defendant Reading Anthracite Co.

Morey M. Myers, Robert J. Nolan, Gelb & Myers, Scranton, Pa., for defendant Lehigh Valley Coal Sales Co.

## OPINION

MUIR, Judge.

### I. Introduction.

This antitrust action brought by the Commonwealth of Pennsylvania (the Commonwealth or Pennsylvania) against the Defendants alleges that the Defendant anthracite coal companies between 1961 and 1977 fixed the price and supply of anthracite coal in violation of the antitrust laws of the United States. This case is one of several which have been transferred to the undersigned judge for consolidated pre-trial proceedings. In this Court's pre-trial order of September 30, 1977, the Court directed that discovery be completed on all class issues by December 23, 1977 (¶ 12.2). That Order specifically required in ¶ 12.3 that all motions seeking class action determination together with all supporting briefs and substantiating documents be filed by the Plaintiffs no later than January 20, 1978. Pennsylvania has filed a motion for class action certification accompanied by a supporting brief. The Defendants have filed a brief in opposition to that motion. Pennsylvania seeks to represent two distinct classes, a public entity class and a class consisting of homeowners and apartment house owners. Pennsylvania defines the public entity class as "All cities, counties, boroughs, municipalities, school districts, political subdivisions and public authorities or agencies that have purchased anthracite coal from one of the defendants or co-conspirators for their own use in heating buildings." The Commonwealth defines the consumer class as "All home and apartment owners in the Commonwealth that purchased anthracite coal directly from the Defendants for their own use in heating their homes and apart-

ments." Commencing on May 3, 1978 and ending on May 9, 1978, the Court held a hearing on the motions of Pennsylvania and four other Plaintiffs to represent various classes pursuing antitrust claims against the Defendants. The following are the Court's findings of fact, discussion, and conclusions of law concerning the motion of Pennsylvania to represent a public entity class and a consumer class.

## II. Findings of Fact.

1. Pennsylvania has filed a Complaint and an Amended Complaint (C.A. 77–867) alleging that Defendants combined and conspired to fix the price of anthracite coal and to limit anthracite coal production. (Undisputed)

2. Pennsylvania seeks to represent both a public entity class and a consumer class. (Undisputed)

3. Pennsylvania desires to represent a public entity class defined as follows:

"All cities, counties, boroughs, municipalities, school districts, political subdivisions and public authorities or agencies that have purchased anthracite coal from one of·the defendants or co-conspirators for their own use in heating buildings."

(Undisputed)

4. Pennsylvania desires to represent a consumer class defined as follows:

"All home and apartment building owners in the Commonwealth that purchased anthracite coal directly from the defendant for their own use in heating their homes and apartments."

(Undisputed)

5. Pennsylvania has failed to prove that it directly reimbursed homeowners for their purchase prices of anthracite coal during its claim period.

6. There were 141 public entities in Pennsylvania which purchased anthracite coal directly from the corporate Defendants in the period 1966 through 1974. (Undisputed)

7. There were approximately 1000 homeowners and apartment house owners in Pennsylvania who purchased anthracite coal directly from the corporate Defendants in the period 1966 through 1974. (Undisputed)

8. Pennsylvania imposes specifications relating to the quality, type, and size of anthracite coal which it desired separately for each of the state institutions covered by its master contract. Among the special requirements imposed by Pennsylvania were regulations regarding the origin of the anthracite coal, treatment of coal delivered by rail in the winter, applicable water allowances, sizing requirements, specifications regarding moisture, ash, BTU, ash softening temperature, sulphur content, and other chemical and physical properties, vendor source (mine) regulations and detailed sampling and testing provisions. (Undisputed)

9. In addition to these detailed requirements, Pennsylvania also reserved the right to cancel any coal supply contract for any using institution if the ordered coal failed to work "efficiently" with the using institution's fuel burning equipment, even if the coal met the precise analytical specifications established in the Commonwealth's bid invitation.

10. In addition to establishing specific requirements regarding the quality, type, and size of anthracite coal supplied to state institutions, Pennsylvania also imposed a number of terms and conditions of supply. These included the requirement that the successful vendor(s) supply the complete requirements of each using institution, even though those requirements might exceed those estimated by the institution; the requirement (through April 30, 1974) that a firm, fixed price be charged by the successful vendor on an annual basis, without escalation, precise visitation requirements mandating the successful vendor to visit the using institution at least three times during the contract year, and provisions regarding the weighing and testing of anthracite coal supplied to each using institution.

11. Comparison of Pennsylvania's specifications with those imposed by other public entities reveals significant differences relating, *inter alia,* to pricing, vendor source,

delivery, and chemical and physical qualities.

12. The Shamokin School District in Pennsylvania obtained its anthracite coal requirements at a price some ten dollars a ton lower than the price paid contemporaneously by the Commonwealth.

13. Pennsylvania made at least four "spot" purchases of anthracite coal to supply state park rangers, several of these purchases being made pursuant to a bid procedure.

14. The sealed bid and spot purchasing procurement practices of Pennsylvania have not been shown by it to resemble the procedures followed by homeowners in Pennsylvania who purchased anthracite coal directly during the claim period from any of the named Defendants.

15. Pennsylvania claims total anthracite coal purchases in excess of $80,000,000 over its claim period. (Undisputed)

16. The sealed bid prices submitted to Pennsylvania by its various vendors were not uniform and varied one from the other over the years involved in this lawsuit.

17. Prior to May 1, 1974, Pennsylvania's requirements were supplied on an annual firm, fixed-price basis, without escalation even though the circular prices of certain of the Defendants changed at least four times during any given year.

18. Effective with the 1974–1975 contract year, Pennsylvania included an escalator clause affecting initial bid prices to Pennsylvania, based upon the average of certain cost factors of four of the Defendants as those factors were reported in "The Black Diamond" magazine.

19. Pennsylvania's special counsel in this case are excellent and experienced antitrust lawyers. (Undisputed)

20. Individual public entities, and individual homeowners, within Pennsylvania may institute separate lawsuits against these Defendants. (Undisputed)

21. All class members must depend upon substantially the same evidence to prevail on the issue of whether an illegal conspiracy existed.

III.  Discussion.

1.  Requirements for Maintenance of Class Action.

■  F.R.Civ.P. 23(a) sets forth four mandatory prerequisites for the maintenance of any suit as a class action: (1) that the class is so numerous that joinder of all members is impracticable, (2) that there are questions of law or fact common to the class, (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) that the representative parties will fairly and adequately protect the interests of the class. The proposed class representative must also be a member of the class for which he seeks certification. *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir. 1970), cert. denied 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); 3A Moore Federal Practice ¶ 23.04.

■  In addition to meeting the full requirements of F.R.Civ.P. 23(a) a class action must also qualify under one of the three subdivisions of F.R.Civ.P. 23(b). Pennsylvania contends that this action is maintainable under F.R.Civ.P. 23(b)(3). Thus, if Pennsylvania is unable to meet the standards of F.R.Civ.P. 23(b)(3), it will fail to show that the action is maintainable under F.R.Civ.P. 23(b). Pennsylvania bears the burden of showing that it meets every requirement of F.R.Civ.P. 23 before the Court can certify it as a class representative for all public entities in the Commonwealth of Pennsylvania and for its consumer class. *DeMarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968); *City of Philadelphia v. Emhart Corporation,* 50 F.R.D. 232 (E.D.Pa.1970); *Weisman v. MCA, Inc.,* 45 F.R.D. 258 (D.Del.1968); *Philadelphia Electric Company v. Anaconda American Brass Company,* 43 F.R.D. 452 (E.D.Pa.1968); *Al Barnett & Son, Inc. v. Outboard Marine Corporation,* 64 F.R.D. 43 (D.Del.1974); *Daye v. Commonwealth of Pennsylvania,* 483 F.2d 294 (3d Cir. 1973), cert. denied, 416 U.S. 946, 94 S.Ct. 1956, 40 L.Ed.2d 298 (1974); *Senter v. General Motors Corporation,* 532 F.2d 511 (6th Cir. 1976). The Court will deal with

each of the applicable requirements of Rule 23(a) and (b) for each proposed class *seriatim.*

### 2. Numerosity.

█ F.R.Civ.P. 23(a)(1) mandates that a party seeking to represent a class establish that the class is so numerous that joinder of all members is impracticable. Pennsylvania and the Defendants agree that there are 1000 members in the proposed consumer class and agree that this class is so numerous that joinder of all its members is impracticable. Pennsylvania and the Defendants have also stipulated that there are 141 public entities in Pennsylvania's public entity class. The Defendants maintain that this class is not so numerous as to render joinder impracticable. The Court concludes that based on the circumstances of this case a class of 141 public entities is not so numerous that joinder is impracticable. Impracticability of joinder does not mean impossibility of joinder. It is sufficient to show that it is extremely difficult or inconvenient to join all of the members of the class. *Carey v. Greyhound Bus Company, Inc.,* 500 F.2d 1372, 1381 (5th Cir. 1974); *Union Pacific Railroad Company v. Woodahl,* 308 F.Supp. 1002, 1008 (D.Mont.1970); 3B Moore's Federal Practice ¶ 23.05. Pennsylvania has not established why joinder would be impracticable in this case. It has not met its burden of proof. If all 141 public entities were to file individual antitrust complaints against the Defendants, the Court believes that the procedures pertaining to multidistrict litigation could adequately and without substantial difficulty process those claims. Numerous airplane disasters involving large numbers of individuals have been handled by the procedures for multidistrict litigation. The potential class members of the public entity class are all in one state. Informal coordination of their efforts would not be difficult.

The numbers of the proposed class are not by themselves determinative as to whether joinder is impracticable. The circumstances that exist in each case must be analyzed. This standard explains the divergent results which the courts have reached concerning potential classes of similar sizes. Several courts have concluded that prospective classes of essentially the same size as the public entity class set forth by Pennsylvania and of a significantly larger size than that class were not numerous enough to render joinder impracticable. In *State of Utah v. American Pipe and Construction Company,* 49 F.R.D. 17, 21 (C.D.Cal.1969), the Court found that a potential class of 350 was not so numerous as to result in joinder and intervention being impracticable. In *Minersville Coal Company v. Anthracite Export Association,* 55 F.R.D. 426, 428 (M.D.Pa.1971), the undersigned judge held that the potential class of 330 was not impracticable for joinder. In *City and County of Denver v. American Oil Company,* 53 F.R.D. 620 (D.Colo.1971), the Court stated that a class of 126 would not result in joinder being impracticable. In *Van Allen v. Circle K Corporation,* 58 F.R.D. 562 (C.D. Cal.1972), the Court found that a potential class of 129 did not create an unmanageable piece of litigation.

Some commentators have expressed the view that because one of the purposes of the class action device is to provide a mechanism for people with small claims to redress their grievances the determination that it would be financially difficult or impossible for class members to bring individual actions demonstrates impracticability for purposes of Rule 23(a)(1). Wright & Miller Federal Practice & Procedure, § 1762, Donelan Prerequisites to a Class Action Under New Rule 23; Class Action—A Symposium, 1969, 10B C.Ind. & Com.L.Rev. 526, 531. Even if this approach is correct, Pennsylvania has not shown that any of the proposed members of the public entity class would be financially unable to bring their own actions. No evidence was introduced on this issue.

In the light of the foregoing, the Court concludes that Pennsylvania has not met its burden of showing that the proposed public entity class is so numerous as to render joinder impracticable.

3. Common Questions of Law and Fact.

Pennsylvania and the Defendants have stipulated that common questions of law and fact exist for each of the two proposed classes.

4. Typicality.

To maintain a class action Pennsylvania must show that claims or defenses of the representative parties are typical of the claims or defenses of the class. F.R.Civ.P. 23(a)(3). Typicality constitutes the most difficult aspect of this Rule to apply. Many courts as well as Professor Moore have concluded that there is no need for this clause because all the meanings attributable to it duplicate the requirements prescribed by other provisions of F.R.Civ.P. 23. 3B Moore's ¶ 23.06–2.

■ This Court has a greater degree of faith than does Professor Moore in the good sense of the Advisory Rules Committee. This Court will not lightly conclude that a meaningless provision has been promulgated. Consequently, it will attempt to apply a test with some pertinence for the typicality requirement. The Court concludes that a plaintiff has satisfied Rule 23(a)(3) if the claims and defenses of the representative and the members of the class stem from a single factual situation or are based on the same legal or remedial theory. *Mersay v. First Republic Corporation of America,* 43 F.R.D. 465 (S.D.N.Y.1968). This Court agrees with Professor Wright who stated that Rule 23(a)(3) may have independent significance if it is used to screen out class actions where the legal or factual position of the representative is markedly different from that of the other members of the class even though common issues of law or of fact are raised. Wright & Miller Federal Practice & Procedure, Civil, § 1764.

The Court rejects the arguments of the Defendants that typicality is not present here because of differences in the procurement and pricing practices of Pennsylvania as opposed to the other public entities and because no evidence has been introduced to show how consumers and apartment owners buy coal. These distinctions are not significant and do not affect the claims set forth by Pennsylvania and the potential causes of action of the proposed class members. *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir. 1977); *In Re Master Key Antitrust Litigation,* 70 F.R.D. 23, 27 (D.Conn.1975), appeal dismissed 528 F.2d 5 (2d Cir. 1975).

The Defendants also contend that Pennsylvania's claims are not typical of those of the two classes which it seeks to represent because the anthracite production control plan mandated by Pennsylvania was the determining factor causing the rise in anthracite coal prices through 1974. Of course, Pennsylvania denies this contention. The Court does not believe that this defense on the part of the coal companies renders Pennsylvania's claims atypical. Like the proposed members of both classes, Pennsylvania's claim is that the Defendants conspired to control the price of coal and the supply of coal. The contentions of the proposed class members would be similar. *Bogosian v. Gulf Oil Corporation,* 561 F.2d 434, 455 (3d Cir. 1977); *State of Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484 (N.D.Ill.1969). The defense that the rise in coal prices was caused by a plan mandated by the Commonwealth of Pennsylvania would be available to the Defendants against any plaintiff. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976). The Court expresses no opinion as to whether this defense is legally adequate based on the facts in this case.

■ The Defendants contend that the prices which Pennsylvania paid were not based on circular prices. According to the Defendants, the alleged conspiracy, if it existed at all, was based on circular prices agreed upon by the Defendants. Pennsylvania replies that the agreement by the Defendants to fix the circular prices raised the bid prices which were submitted to it. The Court does not believe that any significant difference exists between the conspir-

acy that the proposed class members would have to establish and that which Pennsylvania has to establish. The showing of impact required to establish a violation of the antitrust laws once Pennsylvania has established that the price of coal would have been lower if it were not for the conspiracy would be the same for both proposed classes and Pennsylvania. The Court concludes that Pennsylvania's claims are typical of both of the proposed classes it seeks to represent.

5. Fairness and Adequacy of Representation.

■ Pennsylvania must establish that it will fairly and adequately protect the interests of the class. This requirement necessitates that the prospective class representative show that it and its attorneys will competently, reasonably, and vigorously prosecute the suit and that the relationship of the representative party's interest to those of the class is such that there is not likely to be divergence of viewpoint or goals in the conduct of the suit. *Bogosian v. Gulf Oil Corporation*, 561 F.2d 434, 455 (3d Cir. 1977). The Defendants have stipulated that counsel for Pennsylvania are excellent attorneys and are well experienced in the field of antitrust litigation.

■ The Defendants contend that Pennsylvania will not competently prosecute this suit because its agents have no knowledge of the anthracite coal requirements of any public entity within Pennsylvania and have rendered no assistance to any such entities concerning the purchase of coal with the exception of responding to one inquiry from the City of Philadelphia. The Court does not believe that it is necessary for a class representative to have intimate knowledge concerning the operating procedures of members of the class. In *In Re Goldchip Funding Company,* 61 F.R.D. 592, 594–595 (M.D.Pa.1974), this Court mentioned that one of the functions competent class representatives could perform was to provide certain knowledge concerning the facts which gave rise to the suit. This was not meant to be a hard and fast requirement

but merely one consideration in determining competency of the class representative. In *Goldchip,* the Court was specifically concerned that the class representatives would be no more than a rubber stamp for their attorneys. In that case the Court's initial view that the class representatives were nothing more than the willing agents of their attorneys was later confirmed. The Court believes that Pennsylvania would diligently monitor the actions of its counsel and protect the interest of the class, if this Court were to certify it as the representative of either a public entity or consumer class or both.

The Defendants also maintain that Pennsylvania is not a competent representative because although a state statute permits any political subdivision to participate in the contracts entered into for the purchase of coal Pennsylvania failed to introduce any evidence that any political subdivision has ever utilized this opportunity. The Court believes that this is irrelevant and has no bearing at all on Pennsylvania's competency to be a class representative.

The Defendants also contend that Pennsylvania would not be a competent representative of the public entity purchasers because Pennsylvania concluded in a specially commissioned study in 1974 that price increases of anthracite coal in that year were justified and fair. This contention lacks any merit. It is quite possible for Pennsylvania to have been deluded at that time concerning the fairness of the price. The Defendants should not be allowed to argue that because they were allegedly successful in perpetrating a price conspiracy and in concealing the conspiracy from their purchasers one of those purchasers is barred from bringing the suit as a class representative.

■ Next, the Defendants argue that because Wilbur A. Swade, Director of the Bureau of Standards, Department of General Services, Commonwealth of Pennsylvania, testified at the hearing concerning Pennsylvania's motion for class certification that he would not ask for the original time records of Pennsylvania's counsel in this

antitrust litigation, that Pennsylvania would not be an adequate class representative. Swade did indicate that he would diligently review the application for attorney's fees presented by Pennsylvania's counsel. The Court does not believe that a class representative has an obligation to seek his counsel's original time records. Such a practice appears to accomplish little. Most attorneys would have other matters noted on time sheets along with hours spent concerning the class action litigation. Counsel would be forced to block out references to his other clients to preserve his obligation of confidentiality to them. Certainly a class representative can diligently safeguard a class's interest against excessive attorney's fees by reviewing the hours claimed to have been spent on litigation and the hourly rate charged for that time.

In the light of the foregoing, the Court concludes that Pennsylvania would be a competent and fair representative for both of the classes it seeks to represent.

6. Member of the Class.

Rule 23(a) also requires that a class representative belong to the class he purports to represent. Pennsylvania obviously belongs to the public entity class. Pennsylvania has presented no evidence that it owns apartment buildings or any apartment type dwellings. Consequently, the Court concludes that it cannot represent apartment house owners.

At the hearing Pennsylvania presented data that it bought coal for four houses maintained for state park rangers and thus contends that it is within the class of homeowners. The requirement that a plaintiff be a member of the class that he seeks to represent is not satisfied merely because the named plaintiff has certain characteristics in common with members of its requested class. Rather, the named representative must also be personally affected and harmed by the Defendant in the same manner as the requested class. *Barrett v. Thorofare Markets, Inc.*, 77 F.R.D. 22, 26 (W.D.Pa.1977); *Broomer v. Schultz*, 239 F.Supp. 699 (E.D.Pa.1965), aff'd per curiam,

356 F.2d 984 (3d Cir. 1966). The Court believes that Pennsylvania has met this test. It buys coal for four homes. It would be hurt by any rise in the price of coal in much the same manner as a homeowner would.

The cases which the Defendants cite in support of their proposition that Pennsylvania is not a member of the class of homeowners which it seeks to represent are inapposite. In *People v. Home Federal Savings & Loan Association*, 521 F.2d 704, 707 (7th Cir. 1975), the State's Attorney of DuPage County, Illinois, attempted to bring a class action on behalf of Illinois citizens who sought home mortgage loans. The Court concluded that the State's Attorney was not a member of the class he sought to represent because he did not allege in his complaint that either he or the State of Illinois sought such a loan. In the case now before this Court, Pennsylvania has contended that it owns four homes and bought coal for those homes.

In *In Re Motor Vehicle Air Pollution Control Equipment*, 52 F.R.D. 398, 404–405 (C.D.Cal.1970), affirmed in part, reversed in part, 481 F.2d 122 (9th Cir. 1973), cert. denied, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1974), the Court held that a governmental agency might with reference to a particular act or series of acts stand in the same position as an individual who lives within its jurisdiction but in the context of the acts alleged in that case which was harm to the environment and any impact or damage resulting therefrom the government agency raised issues which were peculiar only to its status as a governmental agency. Such is not the situation in this case concerning Pennsylvania's claim that it overpaid for the coal it purchased for four homes it provided to its park rangers. In *In Re Sugar Antitrust Litigation*, 1977–1 Trade Cas. ¶ 61,373 (N.D.Cal.1976), the states of Illinois, Colorado, and Arizona sought to represent consumer classes totalling 15,780,000. The Court held that a dichotomy of interests existed from the peculiar impact and damage aspects of the

states' claims and stated that it was not significant for purposes of class certification from whom the states purchased sugar but rather the manner in which they used the sugar commodities they bought, which differed from the way the members of the proposed class used sugar. In this case, Pennsylvania contends that it used the coal for the heating of the four homes the same way in which the coal was generally used by members of the homeowners' class.

The Court concludes that Pennsylvania is a member of the homeowners' class but it is not a member of the apartment owners' class and cannot represent apartment owners in this litigation.

7. Rule 23(b)(3).

To meet the requirements of Rule 23(b)(3), Pennsylvania must establish that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available means for the fair and efficient adjudication of the controversy. If common questions do not predominate the maintenance of a class action far from achieving judicial economy would necessitate a plethora of mini-trials. *In Re Transit Company Tire Antitrust Litigation,* 67 F.R.D. 59, 72 (W.D.Mo.1975); *Hettinger v. Glass Specialty Company,* 59 F.R.D. 286, 294 (N.D.Ill.1973). A mere allegation of conspiracy is not sufficient to satisfy the predominance requirement. Instead, the Courts require a careful scrutiny of the three essential elements of every private antitrust action and the nature of proof required to satisfy these elements. *Windham v. American Brands, Inc.,* 565 F.2d 59, 65–66 (4th Cir. 1977); *Kline v. Coldwell Banker & Co.,* 508 F.2d 226, 231–35 (9th Cir. 1974), cert. denied 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). The three essential elements that Pennsylvania and each member of the purported classes must prove to establish a right to recover under 15 U.S.C. § 15 are (1) that a violation of the antitrust laws has in fact occurred, (2) that the claimed violation actually and proximately caused the class representative and each member of the purported class injury in its business or property and (3) that the injury sustained is measurable in damages. Common questions of law and fact exist concerning the violation of the antitrust laws. If Pennsylvania establishes a price and a supply conspiracy it will have shown a conspiracy as to all the other members of each of the prospective classes which it desires to represent. In addition, if Pennsylvania can show that the price conspiracy and the supply conspiracy resulted in higher prices for anthracite coal, it will have shown an impact or damage for all of the members of the two classes. The issue of actual damages measurable in dollars may well have to be ascertained in other proceedings. The fact that damages must be individually determined does not necessarily lead to the conclusion that common questions of law and fact fail to predominate. *Bogosian v. Gulf Oil Corporation,* 561 F.2d 434 (3d Cir. 1977).

In this case, common questions of law and fact do not predominate because Pennsylvania and all of the members of the two classes which it purports to represent must overcome the bar of the four year statute of limitations to their antitrust claim. Pennsylvania seeks to do this by alleging that the Defendants engaged in fraudulent concealment to prevent Pennsylvania and the members of its two proposed classes from discovering the antitrust violations. To establish fraudulent concealment Pennsylvania must show (1) fraudulent concealment and (2) failure by the Plaintiff to discover the facts which are the basis of this cause of action despite (3) the exercise of due diligence on its part. *Weinberger v. Retail Credit Company,* 498 F.2d 552, 555 (4th Cir. 1974). If Pennsylvania can show fraudulent concealment as to itself by the Defendants, it would also in effect be showing fraudulent concealment as to all the members of the proposed classes. The other two requirements of showing fraudulent concealment require an individual determination. In *Minielli Cement Contracting, Inc. v. Richter Concrete Corporation, Inc.,* 62 F.R.D. 381, 390 (S.D.Ohio, 1973), the

Court concluded that the questions of due diligence and success of concealment would have to be answered on an individual basis for each class member. In *Chevalier v. Baird Sav. Association*, 72 F.R.D. 140, 153, 154 (E.D.Pa.1976), Chief Judge Lord held that where members of a class would have to rely on fraudulent concealment, common questions did not predominate because with respect to each plaintiff whose claim would be otherwise time-barred there would have to be an inquiry into his or her knowledge and his or her diligence in discovering the facts and perhaps even what representations were made by the various Defendants to each purchaser. See Cf. *White v. Deltona Corporation*, 66 F.R.D. 560, 564 (S.D.Fla. 1975). In *In Re Sugar Industry Antitrust Litigation*, 1977–1 Trade Cas. ¶ 61,373 (N.D. Cal.1976), Judge Boldt held that the logical extension of the argument that each potential class member must demonstrate that he exercised due diligence in attempting to discover the alleged conspiracy would be that no conspiracy could be the basis of a class action since collusion against detection is inherent to a conspiracy. The Court finds this approach unconvincing. In the light of the foregoing, the Court concludes that in both proposed class actions common issues of law and fact do not predominate.

In determining whether a class action is superior to other available methods the Court must take into consideration (1) the interest of the members of the class in individually controlling the prosecution or defense of their separate actions, (2) the extent and nature of any litigation concerning the controversy that has been commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum and (4) the difficulties likely to be encountered in the management of the class action.

The Court believes that in this case as to both of the proposed class actions allowing the prospective members of the class to proceed individually is superior to a class action. Several lawsuits have been filed against the Defendants alleging a conspiracy to control prices. If any of the plaintiffs are successful in establishing that contention it benefits all prospective class members because the Defendants would be bound by that determination in subsequent litigation. *Katz v. Carte Blanche Corporation*, 496 F.2d 747 (3d Cir. 1974). The requirement that estoppel of a judgment be mutual is no longer the law of the federal courts. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Thus, if any of the Plaintiffs are unsuccessful in establishing a conspiracy, the prospective members of the class would not be harmed since they would not be barred from trying the same issue again. The real burden arising from this method falls on the Defendants. They apparently prefer this approach to a class action. A class action procedure is somewhat unwieldy and time-consuming because of the necessity for notice, for court approval of the settlement, and the opportunity for each class member to object to the proposed settlement. In addition, the issue of appropriate attorneys fees for the class representative in the experience of the undersigned judge has in the past required as much judicial attention as the actual litigation, if not more attention. In many instances, these burdens are outweighed by the advantage offered by a class determination. But for the reasons stated above, this advantage does not exist in this case because the issue of fraudulent concealment must be individually determined for each Plaintiff.

The members of the prospective class in the Court's view have an interest in individually controlling the prosecution of separate actions. This interest stems from the individualized nature of the proof which they must establish to show fraudulent concealment.

In the light of the foregoing, the Court will deny the motion of the Commonwealth of Pennsylvania to certify its action as a class action as to both its public entity class and its consumer class.

IV.   Conclusions of Law.

1.   The Commonwealth of Pennsylvania is not a member of the proposed apartment owners class.

2.   The Commonwealth of Pennsylvania is a member of the proposed homeowners class.

3.   The requirements of Rule 23(a)(2) relating to common questions of law and fact have been satisfied as to both of the proposed classes.   (Undisputed)

4.   The Commonwealth has failed to prove that the proposed public entity class is so numerous that joinder of all its members is impracticable.

5.   The proposed consumer class is so numerous that joinder of all its members is impracticable.

6.   The Commonwealth's claims are typical of the proposed homeowners and apartment house owners consumer class.

7.   The Commonwealth's claims are typical of the proposed public entity class.

8.   The Commonwealth would fairly and adequately protect the interests of both the public entity and consumer classes.

9.   Common questions of law and fact do not predominate over questions affecting only individual members of both the public entity and consumer classes.

10.   The Commonwealth has failed to prove that a class action is superior to other available methods for the fair and efficient adjudication of the controversies between Defendants and the members of the alleged public entity class and the members of the consumer class.